(No. 40132.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
CHARLES BUSSIE, Appellant.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 28, 1969.*

WARD, J., took no part.

CHARLES B. EVINS, EARL E. STRAYHORN, R. EUGENE PINCHAM, and GLENN C. FOWLKES, all of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED J. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES S. VELDMAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County the defendant, Charles Bussie, was found guilty, on consolidated indictments, of the unlawful sale of a narcotic drug and of unlawful possession of narcotic drugs. He was sentenced to the penitentiary for a term of 10 to 12 years for the unlawful sale and for a term of 2 to 5 years for unlawful possession, the sentences to run concurrently. He appeals directly to this court contending that the indictments under which he was charged failed to state crimes; that the court erred in failing to grant his motion to suppress evidence; and that the court erred in its instructions to the jury.

Defendant's objection to the indictments is based upon the fact that although each charge sets forth a violation of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1963, chap. 38, par. 22—1 et seq.), neither alleges that the violation was committed knowingly.

It is undisputed that knowledge is an essential element in the chain of proof of the crimes of possession or sale of narcotics. Here both indictments were couched in the language of the Uniform Narcotic Drug Act and we held, in *People* v. *Mills*, 40 Ill.2d 4, that such an indictment is sufficient even though it lacks an averment that the defendant committed the violation with knowledge. We noted in *Mills*

that three sister jurisdictions which had adopted the Uniform Narcotic Drug Act prior to its adoption in Illinois have held that "knowledge or scienter is implicit in the language of the statute and thus it does not have to be alleged separately." We hold therefore that the indictments in question are valid.

The defendant next contends that the trial court erred in denying his pretrial motion to suppress evidence relating to the charge of possession. The evidence presented by the prosecution shows that on June 24, 1965, Chicago police officers, Pates and Jamison, arranged with two informants to make a "controlled purchase" of narcotics from a suspect. One of the informants, Palmer, was then searched and found to be free of any narcotic drugs or currency. He was then given $300 in pre-recorded bills and he and the other informer, followed by the police, went to the apartment of co-defendant Samuel Banks. Banks advised the informers that, although he did not have a sufficient supply of narcotics himself, he would arrange for such a purchase from another party. The two informers and Banks then left Banks's apartment and proceeded, followed by Officers Pates and Jamison, to a building at 8141 South Maryland Street in Chicago. Palmer and Banks went into the building to an apartment where they were admitted by a man later identified by Palmer as the defendant Charles Bussie. According to Palmer's testimony, Bussie then agreed to sell Palmer 17 cans of marijuana and, after receiving Palmer's money, placed the marijuana in a paper bag. Palmer and Banks then left the building carrying the marijuana and proceeded to drive away in a car. The car was subsequently curbed by the police and its occupants were taken into custody and searched. A search of the automobile revealed the presence of the paper bag filled with marijuana and the absence of the pre-recorded money. Palmer was then taken back to the building on Maryland Street where he pointed out to the police the apartment where the

sale had taken place. Palmer, Banks and the other informer were then taken to police headquarters.

It is not clear from the record how much time elapsed between transporting these men to headquarters and the return of the police to Bussie's apartment but they apparently returned immediately. The officers obtained no response after knocking on the door of the apartment indicated by Palmer, so they proceeded to break it down with a sledge hammer. Finding no one present, the officers conducted a search of the apartment and found a small package of marijuana. While conducting the search the officers heard some one in the hall who, upon investigation, revealed himself to be the defendant Charles Bussie. Bussie was then placed under arrest and a search of his person revealed one of the pre-recorded $10 bills. The record does not indicate whether the marijuana was found before or after the defendant Bussie returned to his apartment and he argues that the search was illegal and that the marijuana found in his apartment should have been suppressed.

The United States Supreme Court has consistently stressed that the essential purpose of the fourth amendment is to protect individuals from unwarranted intrusions into their privacy. (*Giordenello* v. *United States,* 357 U.S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245; *Johnson* v. *United States,* 333 U.S. 10, 92 L. Ed. 436.) Such holdings regarding the fourth amendment are, of course, applicable to Illinois through the fourteenth amendment. (*Mapp* v. *Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684.) Because of this concern with an individual's right to privacy the courts have carefully drawn and limited any exceptions to the general rule that such a search must rest upon a search warrant. One of these exceptions, the one relied upon in this case by the State, is that a search without a warrant is valid so long as it is incident to a valid arrest. (*Ker* v. *California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623; *Brinegar* v. *United States,* 338 U.S. 160, 93 L. Ed. 1879;

*People* v. *Jones,* 31 Ill.2d 240.) Such searches have been deemed reasonable by the courts and evidence obtained from them has been declared admissible against the defendant. This exception to the general rule must be closely guarded, and consequently, the burden of showing that a search without a warrant was reasonable rests upon the law officers who "must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy." (*People* v. *Jones,* p. 243.) Careful scrutiny of the record before us, however, leads us to the conclusion that the State has failed to demonstate that the search was reasonable. As we have noted no evidence was produced which would support the State's contention that the search of the defendant's premises occurred incidental to or contemporaneously with his arrest. The evidence shows only that, acting upon an informer's tip, police officers, forcibly entered the defendant's dwelling, searched for and discovered a package of marijuana and, at some point, placed the defendant under arrest.

While we do not question whether or not the police had probable cause to arrest the defendant, we seriously question, under the circumstances here present, the right of the police to search defendant's premises before his arrest once they had discovered that defendant was not present.

Of the many cases relied upon by the State to support such a search practically all of them involve searches following a suspect's arrest and stand for the proposition that a search may be undertaken by arresting officers following an arrest without a warrant so long as the arresting officers had reasonable grounds for believing that a criminal offense had been committed and that the person whom they sought to arrest was the person who had committed it. (See *People* v. *Ivory,* 38 Ill.2d 339; *People* v. *McCrimmon,* 37 Ill.2d 40.) Those cases cited by the State concerning searches without an arrest, moreover, are distinguishable on their facts. In *People* v. *Barbee,* 35 Ill.2d 407, for

instance, police officers entered the home of the defendant reasonably suspecting that he had fired several shots at a police officer. The officers entered the premises, without a warrant, in search of the defendant and found a stolen automobile and other merchandise hidden under a tarpaulin. We held that this evidence was admissible against the defendant despite the lack of either an arrest or a search warrant and, further, despite his absence from the premises, on the basis that the officers were legally present on the premises and were not required to overlook a stolen car which was before them in plain view when they removed the tarpaulin in search of the defendant. In the present case, however, even assuming that the police were lawfully present in the defendant's apartment, no showing was made as to where the narcotics were found and as to whether such narcotics were in plain view or carefully hidden. Furthermore, the argument is not made that the police were searching the apartment for the defendant when the narcotics were discovered.

We conclude that in the absence of a showing that the search of defendant's premises was conducted contemporaneously with or after his arrest, or that the narcotics were discovered in a search for the defendant, the search was unreasonable and violative of the defendant's rights under the fourth and fourteenth amendments to the United States constitution. It is our opinion therefore, that the narcotics discovered as a result of this search should have been suppressed. Consequently, defendant's conviction on the charge of possession of narcotics is reversed.

Turning now to the charge of selling narcotics, the defendant argues that the trial court erred in giving the following instruction to the jury: "The court instructs the jury, that anyone who agrees, consorts, or in any manner offers unlawfully to sell, or dispense narcotic drugs to any person, or negotiates to have any narcotic drugs unlawfully sold, dispensed, or given, commits the offense of sale of a

narcotic drug." Such an instruction misstates the law and would lead the jury to conclude that a person had committed the offense of sale of a narcotic drug even though an exchange or sale never took place. Our examination of the evidence, however, clearly indicates that a sale did take place and that the jury could reasonably have determined that the defendant was the seller. Based upon this evidence, therefore, we find that this instruction resulted in no substantial prejudice to the defendant.

Finally, the defendant argues that his instruction No. 15, although granted by the trial judge, was not read to the jury. Although this instruction was indeed omitted from the report of proceedings filed in this court, the State has filed an affidavit by the court reporter stating that the instruction was read to the jury and is contained in his original shorthand notes but was inadvertently omitted from the report of proceedings. The omitted instruction relates only to the charge of possession, and since that conviction is reversed, we need not consider this alleged error.

For the reasons set forth the defendant's conviction on the charge of possession is reversed, while his conviction on the charge of sale of narcotics is affirmed.

*Affirmed in part and reversed in part.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.