People of the State of Illinois, Plaintiff-Appellee, v. Samuel Banks, Defendant-Appellant.

**Gen. No. 51,608.**

First District, Second Division.

December 10, 1968.

Edison L. Hoard, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Samuel Banks, was indicted along with Charles Bussie for the sale of narcotic drugs. Bussie was also charged with the unlawful possession of narcotics. A jury found both men guilty, and defendant, Samuel Banks, was sentenced to the Illinois State Penitentiary for a term of 10 years to 10 years and one day. Defendant Banks prosecutes his appeal to this court, contending that the evidence was insufficient to support a conviction for the sale of narcotics; that the trial court erred in allowing evidence of Bussie's possession of narcotics; that evidence of Bussie's inculpatory statement was improperly admitted; that the trial court improperly restricted cross-examination of a prosecution witness; that the conviction was obtained from evidence procured by entrapment; and that certain instructions to the jury were improper. Charles Bussie appealed his convictions directly to the Supreme Court. (People v. Bussie, 41 Ill2d 323, 243 NE2d 196 (1968).) That court affirmed his conviction for the illegal sale of narcotics, but reversed the conviction for illegal possession of narcotics.

This case involves a controlled sale of narcotics. The evidence for the State was as follows. After recording the serial numbers of 30-ten dollar bills, officers of the Narcotics Division of the Chicago Police Department, on June 24, 1966, went with the informers, Edward Palmer and James Small, to a tavern at 39th and State Street, Chicago, where they met with another informer. Nathaniel Clayton. Palmer and Clayton were searched by the officers, and Palmer was given the prerecorded bills. The three informers and the police officers proceeded in separate autos to 7033 East End Avenue in Chicago. Palmer and Small (the latter did not testify at the trial) then went to defendant's apartment. There Palmer

183

told the defendant that he wished to purchase three hundred dollars' worth of marijuana. Defendant replied that he did not have that much on hand but that he would telephone his contact to see if it could be arranged. After going outside to make the phone calls, defendant and the two informers returned to the apartment, where they were joined by Clayton who had been waiting in the automobile. The four men were in the apartment for about 5 or 10 minutes during which time Palmer told defendant that he wished to buy about two pounds of marijuana. Defendant replied that he did not have that much, but soon would be in touch with his contact. They left the apartment, and after another phone call was made by defendant, the four men proceeded to an apartment at 8141 South Maryland in Chicago. Defendant and Palmer entered the apartment, and Charles Bussie sold one and three quarter pounds of marijuana to Palmer for $295. As Palmer and defendant emerged from the building and entered Clayton's automobile, Palmer gave the police a prearranged signal. The police stopped the car, found the marijuana and arrested the defendant. Palmer accompanied the officers back to 8141 Maryland and indicated Bussie's apartment. The officers were not admitted by knocking, so they broke down the door of the apartment with a sledgehammer. They searched the apartment and found a small package of marijuana. During the search of the apartment, Bussie returned, and a search of his person revealed one of the prerecorded ten dollar bills. Bussie told the officers that he had given the rest of the prerecorded money to a person called Mack.

Palmer and Clayton both testified that they had been drug addicts but that they had given up the habit.

For the defense, defendant testified that on the day in question he was visited by Small and Palmer. While Palmer was a stranger to him, he knew Small under the name of James Short. After visiting a tavern, they

went in Clayton's automobile to 8141 Maryland at Palmer's direction. Palmer and defendant left the car, and defendant remained in the hallway of the building while Palmer went upstairs. A few minutes later, they returned to the car. The police then stopped the automobile and arrested defendant. The marijuana was found by the police on the front seat of the automobile between two of the informers while defendant was seated in the back seat. Defendant denied any knowledge of the bag, its contents or of the narcotics transaction. He was searched, and neither the prerecorded money nor narcotics was found on his person.

Prior to trial, Bussie's motion to suppress the marijuana found in the search of his apartment was denied. State's motion for consolidation of the indictments and charges, to which Bussie made no objection, was allowed over the objection of defendant.

■ Defendant first contends that there was no evidence adduced that he sold narcotics to anyone. We do not agree. The Uniform Narcotic Drug Act provides in part as follows:

> "Sale means and includes traffic in, barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant, or employee." Ill Rev Stats 1967, c 38, § 22-2-11.

In People v. Aldridge, 19 Ill2d 176, 166 NE2d 563 (1960), the Supreme Court stated that to sustain a conviction for the unlawful sale of narcotics it was sufficient to show that the defendant participated in the transaction in some capacity, either as principal, agent, servant or employee.

■ In the instant case, evidence was presented to the jury that Palmer went to defendant's apartment to purchase marijuana, and that the defendant, while unable to supply the requested amount, not only arranged

185

for Bussie to supply the drug, but took Palmer to Bussie's apartment where delivery was made. These acts by the defendant constituted active participation in the unlawful sale, and the defendant cannot escape guilt because neither the narcotic nor the money passed through his hands during the transaction. Defendant cites People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959), in support of his contention that there was no participation in any unlawful sale. However the Boyd case was reversed because the court found that there was insufficient identification of the defendant. No such problem exists here.

█ █ While the testimony of the police informers, both admitted former drug addicts, should be subject to close scrutiny, it does not follow that such testimony must be disbelieved. People v. Drumwright, 48 Ill App 2d 392, 199 NE2d 282 (1964). The testimony of the informers and police officers was sufficient to sustain conviction.

Defendant next contends that the trial court erred in admitting evidence of Bussie's possession of narcotics. Under this heading, he also urges that it was error to consolidate the indictments and charges for trial.

█ █ Where two defendants are jointly indicted for the commission of a crime, they are to be tried together; and whether a separate trial should be granted is largely within the sound judicial discretion of the trial court, People v. Grilec, 2 Ill2d 538, 119 NE2d 232 (1954). Only when the interests of the joint defendants are in fact antagonistic must the court grant separate trials. People v. Dolgin, 415 Ill 434, 114 NE2d 389 (1953). In the case at bar, there was no showing by defendant either prior to trial or during the course thereof that his defense was antagonistic to that of Bussie.

█ While the Supreme Court in People v. Bussie, supra, found that the search of Bussie's apartment was improper and that the narcotics so discovered should have been suppressed, we conclude that their introduc-

tion into evidence was not prejudicial to defendant Banks. The small package of marijuana found in Bussie's apartment was received in evidence only as to the charge of possession of narcotics against Bussie. At the time the State introduced that exhibit into evidence, the trial court sustained the objection of defendant, and it was received only as to Bussie. The jury was instructed that they would have to determine the guilt or innocence of defendant and Bussie separately. The jury was not misled, and evidence of Bussie's possession of narcotics, although improperly admitted into evidence, was not prejudicial to defendant.

■ Defendant also urges that the trial court erred in admitting into evidence an inculpatory statement made by Bussie. At the trial, the police officer testified that Bussie stated that he had given the prerecorded money to a man known as Mack. Defendant made no objection to the introduction of the statement into evidence at the time of trial. The statement made no reference to the defendant, and we find that its introduction was not prejudicial to him.

Defendant next argues that the trial court committed reversible error in sustaining an objection to defense counsel's request that Edward Palmer exhibit his arm to the jury. Palmer testified that he had been a narcotics addict, but that he had broken the habit and had not used narcotics for about eight months. He further testified that when he had used narcotics he took injections of heroin into his arms. On cross-examination, counsel for defendant asked the witness to exhibit his arm to the jury to see if there were fresh lesions on the arm. The trial court sustained the State's objection to that request.

■ ■ Ordinarily, defendant should be allowed on cross-examination to employ any proper method to attack the credibility of a prosecution witness. People v. Lewis, 25 Ill2d 396, 185 NE2d 168 (1962). In the Lewis

case the Supreme Court stated that it was reversible error to prevent the defense from requesting that a State's witness exhibit his arm to the jury to determine whether there was indication of recent use of narcotics. However, the court stated that such undue limitation of cross-examination would constitute reversible error only if the judgment of conviction must stand or fall upon the credibility of that witness. See also People v. Washington, 81 Ill App2d 162, 225 NE2d 673 (1967).

 Examining the evidence in the instant case in the light of the principle enunciated by the Supreme Court, it is evident that the judgment of the trial court can be supported by testimony other than that of Palmer. Nathaniel Clayton testified that he was present when Palmer and defendant made the arrangements for the transaction. Since the conviction can be supported by the testimony of Clayton and the police officers, we find that any undue restriction of the cross-examination of Palmer would not constitute reversible error.

The defendant also contends that his conviction was obtained by entrapment on the part of the police and the informers.

 The defense of entrapment is incompatible with the claim that the defendant did not commit the acts constituting the offense charged. People v. Van Scoyk, 20 Ill2d 232, 170 NE2d 151 (1960) ; People v. Johnson, 24 Ill2d 195, 181 NE2d 164 (1962). These are logical holdings, because the defense of entrapment loses all of its meaning unless the acts charged are admitted by defendant. Defendant Banks had denied consistently any knowledge of a sale or purchase of narcotics; he cannot at the same time contend that he participated in the sale of narcotics as a result of fraud or trickery on the part of the informers. It should also be noted that the defense of entrapment was not raised at trial, but is argued for the first time in this court.

Finally, defendant contends that the trial court erred in the giving of State's Instructions Nos. 12 and 13.

 As to Instruction No. 12, defendant argues that it was a misstatement of the law with respect to the use of force by the police to enter a dwelling. This Instruction referred only to the entry and search of Bussie's apartment. As we have noted, while evidence of Bussie's possession of narcotics was improperly allowed into evidence, People v. Bussie, supra, such evidence was restricted to the charge against Bussie. The court also instructed the jury that they must determine the guilt or innocence of defendant and Bussie separately, and that they must consider the evidence against both men separately. Consequently, the introduction concerning the entry to Bussie's apartment was not prejudicial to the defendant.

State's Instruction No. 13 was as follows:

> "Anyone who agrees, concerts, or in any manner offers to unlawfully sell or dispense narcotic drugs to any person, or negotiates to have any narcotic drugs unlawfully sold, dispensed or given commits the offense of sale of narcotic drugs."

Defendant argues that the above instruction was incomplete and misleading to the jury.

 In People v. Bussie, supra, our Supreme Court stated that the above instruction was incomplete in that it could lead the jury to conclude that a person had committed the offense of sale of narcotics even though a sale had never taken place. However, the court went on to say that an examination of the record clearly indicated that a sale did take place and that there was no substantial prejudice in the giving of the instruction. The jury also was instructed that a person who aids or abets another in the commission of an offense is accountable just as the principal. Defendant had arranged

for the meeting between the informers and Bussie. One who so acts to promote or arrange a sale of narcotics is guilty of a sale which occurs even as is the actual seller of the drug involved. Defendant was not prejudiced by the giving of Instruction No. 13.

 For the reasons stated above, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.