**People of the State of Illinois, Plaintiff-Appellee, v. Raymond C. Nelson, Defendant-Appellant.**

Gen. No. 51,229.

First District, First Division.

April 21, 1969.

■■■■■■■

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

Raymond C. Nelson was charged in an indictment with the crime of unlawful possession of a narcotic drug. After a jury trial, the defendant was found guilty and sentenced to the penitentiary for a term of not less than five nor more than six years. On appeal to this court, the defendant contends that the State failed to prove beyond a reasonable doubt that he had constructive possession and knowledge of the narcotics; that the court improperly instructed the jury; and that the indictment upon which he was convicted failed to charge a crime, in that it failed to allege that he knowingly possessed narcotics.

The evidence presented at the trial shows that on February 2, 1965, at approximately 1:43 p. m., Officers Arnold and Williams executed a search warrant at 4940 South Indiana Avenue, Chicago, Illinois, Apartment 232, naming as an occupant the defendant, Raymond C. Nelson. When the officers entered the apartment the defendant was clothed in his shorts and T-shirt, and appeared to have just gotten out of bed. Officer Arnold observed that the bed in the bedroom was ruffled, as if someone had slept in it. A search of the apartment revealed men's clothing in both rooms of the apartment. On a small table in the bedroom was a brown leather pouch, along with defendant's wallet and several coins, in which Officer Williams found seven foil wrapped pack-

ages, each package containing a white powdered substance. A field test was performed and such powder was tentatively identified as heroin. The defendant denied that the pouch or its contents were his and denied any knowledge of its contents. The defendant dressed himself and was searched, but no narcotics were found on his person. The clothes defendant put on were taken from a closet in the bedroom and other areas of the apartment. The officers and the defendant then proceeded to the police station. The tinfoil packages were brought to the Chicago Police Department's Crime Laboratory, where their contents were found to contain heroin.

Ida Foster, the manager of the aforementioned building testified that the apartment in question was rented to one Jean Osley, a married woman but not living with her husband, and she produced a rent receipt for the period of January 19, 1965, to February 19, 1965, made out to Mrs. Osley. Written on the rent receipt next to Jean Osley's name was the word "Dope" which the witness stated she wrote to identify Mrs. Osley from another woman named "Jean" who resided in the building and also because she had reason to believe that Mrs. Osley was a dope addict. Mrs. Foster also stated that she saw the defendant in the apartment on one occasion, but to her knowledge the defendant did not reside in the building.

Dosie Clark, the defendant's uncle, stated that from December 1964, to February 1965, the defendant lived with him and five other persons at 4941 South Indiana Avenue. Defendant had his own separate room where he kept his clothes and personal effects and ate his meals there during this period.

The defendant, testifying on his own behalf, stated that he resided at 4941 South Indiana Avenue which was directly across the street from the building at 4940 South Indiana Avenue where he was apprehended. On February 1, 1965, he left home about 10:00 a. m., and went to the corner of 47th Street and Indiana Avenue where

he met several of his friends. At about 12:00 p. m., he and his friends went to a tavern located at 209 East 47th Street where he drank until approximately 4:00 p. m. Defendant then left the tavern and went to the cleaners to pick up his overcoat and upon leaving the cleaners met several more of his friends, who along with defendant, went drinking for about four to five more hours. It was nearly midnight when defendant left the tavern, and he was, as he stated, "intoxicated." Due to the late hour defendant was reluctant to go home, as he feared he would wake the children, and while walking in the vicinity of his apartment, he met Mrs. Osley who told him he could stay at her apartment. The defendant had been acquainted with Mrs. Osley since April, 1964, knew her to be a prostitute and had visited her on several occasions prior to the day of his arrest. When defendant and Mrs. Osley arrived at her apartment there was a man already present in the apartment and defendant, after being offered the couch in the kitchen, went to sleep. The next day, Mrs. Osley woke him and told him she was going to the store. Later the police arrived and arrested him.

Defendant denied he was living in the apartment or kept any of his clothes there, denied he had any narcotics when he entered the apartment and denied any knowledge that narcotics were present in the apartment during the time he was there. The jury returned a verdict of guilty. During the hearing on aggravation and mitigation, it was revealed that during the period of July, 1951, to January, 1964, the defendant had been convicted on nine separate occasions of various violations of the Narcotic Drug Act. Defendant was then sentenced to the Illinois State Penitentiary for a term of not less than five, nor more than six years.

Defendant contends that the State failed to establish the crime of possession of narcotics in that the prosecution did not prove beyond a reasonable doubt that the narcotics were in the immediate and exclusive control

of the defendant and that the defendant had knowledge of the fact of such possession. Defendant argues that no constructive possession was proven and relies upon People v. Pugh, 36 Ill2d 435, 223 NE2d 115 (1967), a case whose facts are somewhat similar to the case at bar. In the Pugh case, the facts were as follows:

Two police officers executed a search warrant for the premises in question. After they gained entry, they found Mr. Pugh clad in his shorts and T-shirt under the blankets in bed. One of the officers searched the room where Mr. Pugh had been sleeping and found that part of the molding in the room had been hinged. In a compartment behind the molding the officers found a .38 caliber snub-nosed revolver, some money and several packages of narcotics. Mr. Pugh testified that he did not live in the apartment, that he had been in it for about 6 hours, that the apartment belonged to Patricia Plunkett, and that he had no knowledge of the presence of narcotics in the room.

The Supreme Court indicated that since there was no evidence that the defendant rented or lived in the apartment, the State failed to prove beyond a reasonable doubt that the narcotics were under defendant's control. The court also pointed out that the items were hidden in the apartment and it could not be inferred that the narcotics found were in Pugh's constructive possession.

Defendant also relies upon People v. Robinson, 102 Ill App2d 171, 243 NE2d 594 (1969), and argues that his above contention falls within the scope of the holding of that case. In Robinson, the State did not show actual possession of the narcotics by the defendant, but attempted to show that the defendant was in control of the premises, and therefore the defendant had constructive possession of the narcotics. Yet the evidence introduced was far short of any persuasive force and weight to conclude or infer that the defendant was in possession of the premises, and the police officers themselves testified

400

that the narcotics could have belonged to any one of the four occupants of the apartment.

■ In the instant case, the narcotics were not hidden but were found in open view on a night stand in the bedroom next to defendant's wallet and loose change. There were men's clothing found in the apartment and Officer Williams testified that when the defendant dressed himself, he took his suit and two coats from the closet in the bedroom. It was shown defendant visited the apartment previously and was seen in the building by Mrs. Foster on several occasions. These facts most certainly distinguish the Pugh case from the case at bar, and we are of the opinion that the narcotics found in the bedroom were in the constructive possession of the defendant. See also People v. Nettles, 23 Ill2d 306, 178 NE2d 361 (1962) ; People v. Galloway, 28 Ill2d 355, 192 NE2d 370 (1963) ; People v. Holt, 28 Ill2d 30, 190 NE2d 797 (1963).

■ The defendant next contends it was reversible error to give the State's Jury Instruction No. 9 to the jury over defendant's objection. Such jury instruction reads as follows:

> "The Court instructs the jury in the language of the statute that it is unlawful for a person to possess or have under his control a quantity of narcotic drugs except as authorized by law."

To support his contention, the defendant cites People v. Truelock, 35 Ill2d 189, 220 NE2d 187 (1967). There, the Court affirmed the conviction by saying that it was error giving the above instruction, but not reversible error. The Court said:

> "We agree that the trial court erred in giving the objected to instruction and form of a jury verdict in this case. Without proof that a defendant has knowingly possessed a narcotic drug, a defendant cannot be convicted of the crime of unlawful possession of narcotic drugs, and the jury in this case

401

should have been so instructed. However, we do not think that the error in this case requires reversal. 'Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' " (People v. Ward, 32 Ill2d 253, 256.)

The identical jury instruction was considered in People v. Galloway, 28 Ill2d 355, 192 NE2d 370 (1963) and, as pointed out in People v. Lyons, 4 Ill2d 396, 122 NE2d 809 (1955) and People v. Kessler, 333 Ill 451, 164 NE 840 (1929), it is not necessarily reversible error to give such an instruction where facts and circumstances as presented in the instant case have been proved.

■ The defense also argues that it was reversible error to refuse their Jury Instructions Nos. 12, 13 and 14 which read:

"Defense's Instruction No. 12 Refused:

"The Court instructs you that to commit the crime of unlawful possession of narcotic drugs, the defendant must have immediate and exclusive control of narcotics and must have knowledge of the presence of these narcotics.

"Defense's Instruction No. 13 Refused:

"If you find from the evidence on February 2nd, 1965 Raymond Nelson had immediate and exclusive control of narcotics and had knowledge of the presence of these narcotics, you should find Raymond Nelson guilty.

"Defense's Instruction No. 14 Refused:

"If, however, the State has not proven beyond all reasonable doubt that on February 2, 1965 Raymond Nelson had immediate and exclusive control of nar-

402

cotics and that he had knowledge of the presence of these narcotics, you should find Raymond Nelson not guilty."

The defendant's entire defense was based on the fact that the defendant was not in immediate possession of the narcotics and had no "knowledge" of their existence. The above instructions sought to explain that immediate and exclusive control and knowledge of the presence of the narcotics were essential elements of the crime charged, and had to be proved before defendant could be convicted. In the instant case, the narcotics were found on a table next to the defendant's wallet and loose change. Men's clothing was found in the apartment where the woman who rented it lived alone, and the defendant visited the apartment on several other occasions other than the day of his arrest. Under these circumstances, the defendant's knowledge and control of the narcotics could be inferred, and therefore the instructions offered rightfully refused.

 Defendant's objection to the indictment is based upon the fact that although the charge sets forth a violation of the Uniform Narcotic Drug Act (Ill Rev Stats 1965, c 38, par 22–1 et seq.), the indictment does not use the word, nor allege, that the defendant "knowingly" possessed a narcotic drug, pursuant to the holding in People v. Mills, 40 Ill2d 4, 237 NE2d 697 (1968). In People v. Bussie, 41 Ill2d 323, 243 NE2d 196, (1969), the Supreme Court has settled this issue arising out of their recent pronouncement in the Mills case:

"It is undisputed that knowledge is an essential element in the chain of proof of the crimes of possession or sale of narcotics. Here both indictments were couched in the language of the Uniform Narcotic Drug Act and we held, in People v. Mills, . . . that such an indictment is sufficient even though it lacks an averment that the defendant committed the viola-

403

tion with knowledge. We noted in Mills that three sister jurisdictions which had adopted the Uniform Narcotic Drug Act prior to its adoption in Illinois have held that 'knowledge or scienter is implicit in the language of the statute and thus it does not have to be alleged separately.' We hold therefore that the indictments in question are valid."

In the Mills case, supra, the Supreme Court clearly set forth its interpretation of the indictments:

"In charging Mills with the 'offense of possession of a narcotic drug' which he 'unlawfully possessed and had under his control' the indictment twice uses a form of the technical term 'possession' which is defined in section 4–2 of the Criminal Code to incorporate knowledge: 'Possession is a voluntary act if the offender *knowingly* procured or received the thing possessed or was aware of his control thereof for a sufficient time to have been able to terminate his possession.' (Emphasis added.) It is the law in this State that 'Where a word is so used in one portion of the statute as to have a clearly defined meaning, the same word when used in another portion of the same statute will be given the same meaning . . . .' (People v. Talbot, 322 Ill 416, 422.) Accordingly we find that the defendant must be held chargeable with notice that the term 'possession' used in the indictment implicitly meant knowing possession, and therefore we hold that the indictment returned against Mills was valid although it did not expressly allege that he had knowledge of the narcotics found within his control."

Since the indictment in the instant case and the Mills case are almost identical, the Mills case is controlling

404

here and the rule is clear that an indictment is valid even if the word "knowingly" is not used.

The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

MURPHY and BURMAN, JJ., concur.