People of the State of Illinois, Plaintiff-Appellee, v.
Leonard Keelen, Defendant-Appellant.

Gen. No. 52,755.

First District, Second Division.

October 13, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, James R. Bronner, James Haddad, and William Martin, Northwestern University Law School, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Arthur Belkind, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of the crime of possession of narcotics and was sentenced to a term of five years to eight years in the penitentiary. He appeals.

Defendant filed a pretrial motion to suppress certain evidence seized by police officers in a search of premises occupied by him without first having obtained a search warrant. At the hearing on the motion, defendant was called as a witness and testified that on April 18, 1967, he was in his girlfriend's apartment on the south side of Chicago from 12:00 a. m., until 5:30 a. m., in the company of his girlfriend and her two teen-aged children. At approximately 4:30 a. m., two Chicago police officers knocked down the door to the apartment with a sledgehammer, entered the apartment with guns drawn, searched the apartment, and remained there approxi-

mately two hours. Defendant testified that the officers neither announced their office beforehand, nor placed him under arrest upon entering the apartment. The officers did not show the defendant a search warrant.

Immediately upon entering the apartment, one of the officers reached into the pocket of a coat hanging near the door belonging to one of the teen-agers and recovered a ten-dollar bill. One of the officers accused the defendant of selling narcotics, which the defendant stated he denied. He further testified that just prior to the officers' entry into the apartment a man, unknown to defendant, knocked on the apartment door and spoke to defendant, but defendant's girlfriend said not to let him in.

Police Officer Kenneth Burt testified at the hearing on the motion to suppress and stated that shortly after 1:00 a. m., on April 18, 1967, he and his partner, Officer Lawrence, had a conversation with a police informer named Ted Hall at police headquarters; the officer testified that he had used the informer on several occasions in the past, which had led to both arrests and convictions of narcotics sellers. Hall told the officers that he had been purchasing narcotics from the defendant almost every day for the preceding week or two, and that on the night in question he was going to the apartment to make another purchase. A strip search was made of the informer, which revealed neither narcotics nor money, and the informer was given a prerecorded ten-dollar bill and five prerecorded one-dollar bills with which to effect the purchase.

The two officers and Hall then proceeded to the vicinity of the apartment building in a police car. The officers remained secreted outside the building while the informant entered the building, where he remained for a short while. As Hall exited the building, he met the defendant in the doorway, and the two walked a short way up the sidewalk. Hall immediately returned to the officers and gave them a tinfoil packet, and the three returned to the police vehicle, where Hall returned the five prerecorded one-dollar bills to the officers. The contents of the packet were "field-tested," the results of which revealed the presence of heroin. Hall informed the officers that

he noticed the defendant leaving the scene in a black automobile, but on a subsequent search of the area the officers failed to locate the automobile or the defendant. The officer testified that due to poor lighting and the positioning of defendant and Hall, neither he nor his partner observed the actual transfer of the packet.

The officers and Hall returned to police headquarters where the officers made out a report and prerecorded more funds. The additional prerecorded funds were given to Hall, and the three men returned to the apartment building in an effort to effect a second purchase from the defendant, because the defendant was not apprehended after the first purchase. On this occasion, all three men entered the building and, while the two officers stood in an out-of-the-way place in the hallway down from the apartment, Hall knocked on the apartment door. Officer Burt testified that he heard muffled voices coming from the apartment, and that Hall thereafter returned to the officers, stating that the defendant told him that he had no more narcotics to sell that night, but to see him the next day. The officers approached the apartment door, knocked, and receiving no response, knocked down the door with a sledgehammer. Officer Burt testified that he announced their office and informed the defendant of the charge. He was seated on a bed near a partition where a coat was hanging. The apartment was searched and Officer Lawrence recovered the prerecorded ten-dollar bill from the coat hanging near the door. The officer testified that the search, which took about twenty minutes, revealed nothing other than the ten-dollar bill.

The motion to suppress the ten-dollar bill as evidence was denied, and the case proceeded to trial the following day.

The testimony of Ted Hall at trial was substantially the same as that given by Officer Burt at the hearing on the motion to suppress. In addition, Hall testified that when he entered the apartment building the first time that night, he rang the bell to the apartment where defendant was supposed to have been, but received no answer. Upon exiting the building he saw the defendant at the door-

way, and the two men then walked up the street where the defendant gave him a packet of narcotics in return for the prerecorded ten-dollar bill. After making the purchase and returning with the two officers to police headquarters, the two officers and Hall returned to the apartment to attempt another sale. Hall testified that on the second occasion he knocked on the apartment door, that defendant answered the knock, and that in response to a request by Hall for more narcotics, defendant answered that he had none to sell and that Hall should see him on the street the following day. Hall testified that he conversed with the officers and then left the building and went to the police car. The officers later brought defendant out to the car and asked Hall if defendant "was the same guy," to which Hall responded in the affirmative.

After the testimony of Hall was concluded, the People requested that the defendant stipulate, for the purpose of the trial, to the evidence that had been testified to by Officer Burt at the hearing on the motion to suppress the previous day. The defendant objected, and the court overruled the objection and permitted the officer's testimony of the previous day to stand, but allowed the defendant to cross-examine the officer on any matter which was not brought out on the cross-examination of the officer the previous day.

The People also called Officer Lawrence as a witness, whose testimony substantially corroborated that given by Officer Burt and Ted Hall.

The evidence for the defendant consisted of the testimony of the defendant himself, his girlfriend and the two teen-aged children. Defendant denied selling narcotics to Hall, and stated that he saw Hall for the first time that night when Hall knocked on his door immediately prior to the entry by the police. The balance of the evidence related to the positioning of the coat in which the ten-dollar bill was found in relation to the doorway, and the absence of the defendant from Hall's presence for several seconds after Hall had knocked on the apartment door and sought to effect a purchase the second time.

Defendant first contends that the trial court erred in denying his motion to suppress since there had been no warrant issued for the search of defendant or the apartment, and because the police officers lacked probable cause to arrest the defendant; that, in any event, no arrest was, in fact, made before the search was effected; that, the officers did not enter the apartment for the purpose of arresting the defendant; that no exigent circumstances existed which could justify the officers' immediate and unannounced entry into the apartment without a warrant; and that the scope of the search made of the apartment was too broad.

■ The indictment in this matter charged the defendant with the unlawful sale of narcotics, but the trial court found the defendant guilty of the lesser included charge of possession. The admission of the ten-dollar bill into evidence consequently worked no prejudice against defendant, since the bill related solely to the sale of the narcotics, and not to the possession of the narcotics, which latter offense was proved by the testimony of Hall, as corroborated by the testimony of the officers.

■ In the light of the events which transpired prior to the entry by the officers into the apartment, the officers had probable cause to arrest the defendant for the sale of narcotics to Hall. Hall had a conversation with the officers at police headquarters and told them that he was going to purchase narcotics from defendant that night. Officer Burt had successfully used Hall in the past. Hall was thoroughly strip searched and was given prerecorded funds with which to effect the purchase. The two officers and Hall then proceeded to an apartment building where defendant was to be located, and Hall entered the building, while the officers stationed themselves out of sight outside the building. Hall emerged from the building and met the defendant on the doorstep. The defendant and Hall then walked a short way up the sidewalk, whereupon Hall returned immediately to the officers, giving them a tinfoil packet and a portion of the prerecorded funds and stating to them that he had made the purchase.

After their return to the apartment, anticipating a second sale because the defendant was not apprehended after the first sale, the informer was told by the defendant that he had no more narcotics to sell that night, which is what the informer told the officers. The officers then knocked on the defendant's door and receiving no response, knocked the door down. The officers announced their office and informed the defendant what he was charged with. The record shows that the officers had probable cause to arrest the defendant for the sale of narcotics, and to conduct a search incident to that arrest. Ill Rev Stats 1967, c 38, par 22–25; People v. Battle and Cunningham, 116 Ill App2d 375, 254 NE2d 90. The fact that Hall was not called as a witness at the hearing on the motion to suppress is of no consequence.

The case of People v. Wolfe, 73 Ill App2d 274, 219 NE 2d 634, cited by defendant in support of his position that Hall should have been called as a witness at the hearing on the motion is not in point. In the Wolfe case, the informer did not testify at the hearing on the motion, although requested by the defense. The court on review stated that the police officer's testimony at trial contradicted his testimony at the hearing on the motion, rendering his testimony incredible and thereby failing to establish facts showing probable cause to effect an arrest; the court held that the testimony of the informer was, therefore, necessary. Here, the testimony of the officer independently established probable cause to effect the arrest of the defendant, validating the subsequent search made incident to that arrest.

■ As to the argument that no arrest was made prior to the search, Officer Burt testified that immediately after he and Officer Lawrence entered the apartment they announced their office and informed defendant what he was charged with. Defendant also testified that the officers had their guns drawn when they entered the apartment. This was a matter of credibility for the trier of fact. The testimony of Officer Burt that the officers entered the apartment hoping to find the defendant "dirty" (in possession of narcotics) does not necessarily mean that they entered solely for that purpose, without the

intention to effect an arrest; the officer also testified that they entered the apartment hoping to find the pre-recorded ten-dollar bill. An arrest was effected prior to the search.

■ As to whether the circumstances were such as to warrant the type of entry made by the police, the evidence before the trier of fact was that immediately before the entry by the police, the informer had spoken to the defendant in the apartment, that the police then knocked on the apartment door, and that because no response was immediately forthcoming, the door was knocked down. The trier of fact could reasonably conclude from this evidence that the officers believed that the defendant, when the second knock came, became suspicious, was attempting to flee, to secrete evidence, or the like, and that they found it necessary to gain entrance immediately. Ill Rev Stats 1967, c 38, par 107–5(d). (People v. Barbee, 35 Ill2d 407, 220 NE2d 401.)

In the case of People v. Bussie, 41 Ill2d 323, 243 NE2d 196, cited by defendant, the police officers were shown, by informers, an apartment where a sale of narcotics had theretofore taken place. The officers returned to the police station and then went back to the apartment, without a search warrant. They knocked on the door, and after receiving no response from the inside, they broke the door down. Finding no one home, the apartment was searched. The search was held invalid because the purpose of the entry into the apartment was not to effect an arrest, but to conduct a search. Here, the officers entered the apartment not only in hopes of finding the defendant in possession of narcotics, but also to locate the prerecorded bill and to effect an arrest of defendant for the sale made prior thereto, which in fact was accomplished.

■ With regard to the question of whether the scope of the search was too broad so as to render it unconstitutional, the ten-dollar bill was found in a coat pocket near where defendant was found seated when the officers first entered the room; the coat and the bill were "within his immediate control," in conformity to the requirements set out in Chimel v. California, 395 US 752, 763, cited by defendant. Although the officers searched the entire

apartment, consisting of two small rooms, nothing else was seized, nor introduced as evidence against defendant.

 Defendant lastly contends that it was error to allow Officer Burt's testimony at the hearing on the motion to suppress to stand as his testimony in the case in chief. We disagree.

This was a bench trial. The trial judge stated that he heard the officer's testimony on the motion to suppress just the day before, and that he did not wish the officer to restate the material. He permitted the defendant to cross-examine the officer on matters which were not covered in the defendant's extensive cross-examination on the previous day; defense counsel spent some fifty pages in the record on the cross-examination of the officer at the hearing on the motion, and spent some eighty pages of the record on cross-examination as to Officer Burt's testimony in the case in chief. We do not find any abuse of the trial court's discretion in allowing the testimony to stand for consideration in deciding the case in chief.

The cases of People v. Crump, 5 Ill2d 251, 125 NE2d 615; People v. Hoffman, 379 Ill 318, 40 NE2d 515; and People v. Cox, 87 Ill App2d 243, 230 NE2d 900; cited by defendant are inapposite on their facts from the case at bar. In the Crump case, a witness was called before the court, out of the presence of the jury, to give testimony on an issue; it was held error for the prosecuting attorney to allude to that testimony in his argument to the jury. In the Hoffman case, no witnesses were sworn and all the "evidence" given against the defendant was hearsay. Likewise in the Cox case, it was held error to exclude a witness on the ground of incompetency, based solely upon the record of a prior trial.

For these reasons the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.