(704 P.2d 1012)

No. 57,514

No. 57,669

STATE OF KANSAS, *Appellee*, v. JON M. JUSTICE, *Appellant*.

STATE OF KANSAS, *Appellee*, v. JON MARK JUSTICE, *Appellant*

Opinion filed August 15, 1985.

*Michael T. Manley*, of Blake & Uhlig, P.A., of Kansas City, for appellant.

*D. Paul Theroff* and *Paul J. Morrison*, assistant district attorneys; *Nick A. Tomasic* and *Dennis W. Moore*, district attorneys; and *Robert T. Stephan*, attorney general, for appellee.

Before REES, P.J., PARKS and MEYER, JJ.

PARKS, J.: Defendant Jon M. Justice appeals from his conviction in Johnson County for the sale of psilocybin as that offense is defined and classified in K.S.A. 1984 Supp. 65-4105(d)(18), and K.S.A. 1984 Supp. 65-4127b(b)(3), and from his conviction in Wyandotte County for conspiracy to possess a controlled substance in violation of K.S.A. 1984 Supp. 65-4127b, K.S.A. 1984 Supp. 65-4105(d)(18), and K.S.A. 21-3302. These two cases were consolidated on appeal. In each case, the defendant attacks the constitutionality of the statutes under which he was convicted on the grounds that they provide inadequate notice and violate his right to due process.

The following stipulated facts were presented to the trial court:

"1. Beginning in late June, 1983 and continuing through mid September, 1983, Detective Joe Sweeten, working as an undercover narcotics officer for the Johnson County Sheriff's Office, investigated Jon Justice for sale of psilocybin mushrooms. During the several weeks that Detective Sweeten investigated Jon Justice, the two had several meetings and telephone conversations regarding sales of hallucinogenic mushrooms to Detective Sweeten by Jon Justice.

"2. During Detective Sweeten's investigation of Mr. Justice, Justice stated to Detective Sweeten on numerous occasions that he was a distributor of mushrooms and that he had a retail network set up of people working for him who sold the mushrooms. Justice also on numerous occasions referred to the fact that he 'cooked' and produced the mushrooms in the basement of his house, referring to the various stages of production as 'crops'. Justice never mentioned the mushrooms specifically as 'psilocybin mushrooms'. Justice did state to Sweeten on numerous occasions that the mushrooms were 'strong', got you 'high', and made you 'closer to God'.

"3. On numerous occasions John [sic] Justice also related to Detective Sweeten that the growing and cultivating of mushrooms required a high degree of skill and one needs proper equipment and conditions to grow them well. Justice also stated to Sweeten that the mushrooms were grown in rice cake cultures. Justice also related to Sweeten on several occasions that he could not produce enough mushrooms to keep up with the sales. The two discussed prices for various quantities of mushrooms from ounces to pounds also on numerous occasions. Justice also related to Detective Sweeten that it had taken him approximately three years to reach his current level of expertise and sophistication in growing mushrooms. Justice also cautioned Detective Sweeten that the harvested mushrooms must be kept in a refrigerated environment and that only a small amount of vegetation should be ingested each time when it's taken as they are very powerful.

"4. On June 29, 1983 at approximately 8:55 p.m., Detective Sweeten, pursuant to previous arrangements with Justice, met Justice in the parking lot of the Vickers Service Station located at approximately 63rd Street and Nieman Road in Shawnee, Johnson County, Kansas. At the above mentioned location, Sweeten purchased a quantity of vegetative material from Justice for $375.00. During the meeting between Sweeten and Justice, Sweeten noticed an occupied car sitting in another portion of the parking lot. When Sweeten expressed hesitation due to another vehicle being in the area of the sale, Justice stated that there was no reason to leave, telling Detective Sweeten that the subject in the other car was one of 'his (Justice's) people'.

"5. Detective Sweeten took the vegetative material to the Northeast Johnson County Criminalistics Labortory [sic] where it was analyzed and determined to be hallucinogenic mushrooms, containing psilocybin.

"6. Further, the parties agree and stipulate that Professor Robert Lichtwardt of Kansas University would testify for the defendant at trial in the same manner as he testified at the Motion to Dismiss hearing held on January 19, 1984 in Court 4 before the Honorable William G. Gray."

Professor Lichtwardt, a botanist specializing in mycology, testified that the chemical substances psilocybin and psilocyn occur

naturally in about 20 of the 5,000 or so identified species of mushrooms. He also testified that the two hallucinogenic substances are closely related and may be chemically synthesized. The professor stated that the psychoactive effect produced by ingesting mushrooms containing psilocybin may also be produced by consuming mushrooms containing other naturally occurring hallucinogenic substances such as ibotenic acid and muscimol compounds. He testified that there are about eight to ten species of mushrooms which have been identified as containing ibotenic acid.

Defendant contends that the following statutory provisions should be held to be unconstitutionally vague because they fail to give adequate notice that the possession and sale of psilocybin mushrooms is forbidden:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture, possess, have under such person's control, prescribe, administer, deliver, distribute, dispense or compound:

. . . .

(3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105, and any amendments thereto; or

. . . .

"(b) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with the intent to sell:

. . . .

"(3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105, and any amendments thereto." K.S.A. 1984 Supp. 65-4127b(b)(3).

K.S.A. 1984 Supp. 65-4105(d) states as follows:

"(d) any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted . . . .

. . . .

"(18) Psilocybin."

The following principles control consideration of a constitutional attack on a statute on the grounds of vagueness:

"This court has adopted certain principles to consider when a statute is challenged as unconstitutional. In *State v. Lackey,* 232 Kan. 478, 479, 657 P.2d 40 (1982), we recognized that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done. See also *State v. Carpenter,*

231 Kan. 235, 237, 642 P.2d 998 (1982); *Cardarella v. City of Overland Park*, 228 Kan. at 700. A statute must be sufficiently definite to meet due process standards. The test to determine whether a criminal statute is unconstitutional by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart, the test for vagueness is a common sense determination of fundamental fairness. *State v. Lackey*, 232 Kan. at 479-80; *State v. Carpenter*, 231 Kan. at 237; *Cardarella v. City of Overland Park*, 228 Kan. at 703. See also *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L.Ed.2d 222, 92 S.Ct. 2294 (1972). In determining whether an ordinance is void for vagueness two inquiries are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement." *State v. Dunn*, 233 Kan. 411, 417-18, 662 P.2d 1286 (1983).

Defendant argues that the statutes in question do not convey a sufficiently definite warning concerning the conduct proscribed when measured by common understanding and practice because they do not proscribe the possession of mushrooms containing psilocybin listed by genus and species. In support of this argument, defendant points to the contrast between the statutory treatment of psilocybin and that of other controlled hallucinogenic substances occurring naturally. For example, K.S.A. 1984 Supp. 65-4105(d) lists both "tetrahydrocannabinols," the psychoactive ingredient in marihuana, and the "marihuana" plant itself among the substances whose possession and sale is proscribed. K.S.A. 1984 Supp. 65-4105(d)(13) and (20). K.S.A. 65-4101(o) further defines marihuana to include "all parts of all varieties of the plant *Cannabis* . . . ." Similarly, the statute lists both "mescaline" and its natural source, "peyote." K.S.A. 1984 Supp. 65-4105(d)(14) and (15). Indeed, defendant points out that in the 1982 amendment to that statute, the legislature sought to more clearly define the substances controlled as "peyote" by including the botanical designation of the prohibited plant. Other schedules in the Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.*, also specifically refer to the prohibited substance and its natural source. For example, K.S.A. 1984 Supp. 65-4107(b)(3) and (4) list the natural sources of the narcotic drugs opium and cocaine, opium poppy, poppy straw and coca leaves which have not been decocainized, as controlled substances.

Defendant contends that by contrast to the other hallucinogens

listed in 65-4105(d), psilocybin and psilocyn are the only ones with a major natural source, *Psilocybe* mushrooms, which are not clearly identified in the statute. He argues that this deficiency, in light of the specificity with which other controlled substances are described, creates doubt whether the mushroom naturally containing psilocybin was intended to be controlled. This doubt, he contends, evidences the statute's failure to provide adequate notice that possession or sale of a mushroom containing psilocybin is prohibited.

Three states have previously considered the constitutionality of statutes seeking to control the possession and sale of psilocybin mushrooms. In the first case, *Fiske v. State*, 366 So. 2d 423 (Fla. 1978), the defendant was arrested when he emerged from a field with a bag of wild mushrooms later found to contain psilocybin. The Supreme Court of Florida held that the statutes making possession of psilocybin a third degree felony (Fla. Stat. Ann. §§ 893.03[1][c][15] and 893.13[1][a][2] [West 1976]) were not vague on their face but specifically controlled any material containing psilocybin. However, the court concluded that as applied to this defendant, the statute was vague and defendant's conviction unconstitutional. The court stated in part as follows:

"The statute makes no mention of psilocybic mushrooms or, for that matter, of any other psilocybic organic form that grows wild. If the statute were to specify that psilocybin was contained in certain identifiable mushrooms and were to name those mushrooms, thereby apprising a prospective defendant that possession of those mushrooms is unlawful, it would not be unconstitutional as applied. The statute as presently framed, however, gives no information as to what plants may contain psilocybin in its natural state. More particularly, the statute does not advise a person of ordinary and common intelligence that this substance is contained in a particular variety of mushroom. The statute, therefore, may not be applied constitutionally to appellant. It does not give fair warning that possession of the mushrooms possessed by appellant is a crime. See *Bouie v. Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *State v. Winters*, 346 So. 2d 991 (Fla. 1977)."

Of controlling importance in the Florida court's decision was the complete absence of any evidence that defendant knew that the mushrooms he possessed contained psilocybin. The court did not strike down the statute itself as unconstitutional but held that it could not be applied to a defendant who was not shown to have criminal knowledge. In other words, the court held that as to people who possess mushrooms without knowing they contain

psilocybin, the statute failed to provide a sufficient warning of the criminality of their conduct.

The issue was next addressed by the Illinois Court of Appeals in *People v. Dunlap*, 110 Ill. App. 3d 738, 743, 442 N.E.2d 1379 (1982). The Illinois statute (Ill. Ann. Stat. ch. 56 1/2 ¶ 1204[d] [Smith-Hurd 1985 Supp.]), like our own, included in Schedule I "any material . . . which contains any quantity of . . . Psilo-cyn." Initially, the court held that the statute did prohibit the possession of mushrooms which in their natural state contain psilocyn. The court found that references to other natural sources of controlled substances in other sections of the Illinois Controlled Substances Act, such as poppy straw and coca leaves, combined with the omission of *Psilocybe* mushrooms from the act, did not raise the implication that possession of these mushrooms was legal. Concerning this point, the court stated as follows:

"It is our opinion that the meaning of section 204(d) of the Illinois Controlled Substances Act is expressed without ambiguity. The words 'any material ∗∗∗ which contains any quantity of ∗∗∗ psilocyn' mean exactly that—any such material is a Schedule I substance, and thus mushrooms which, in their natural state, contain psilocyn, are included in Schedule I. We find it difficult to see how the General Assembly could have used any more direct language than it employed.

"Nor does the omission of mushrooms from the Illinois Controlled Substances Act mandate the construction of that statute urged by the defendants. The rule '*expressio unius est exclusio alterius*' is of assistance only where the meaning of a statute is ambiguous, because that maxim requires the interpretation of a statute by use of an implication. (*People ex rel. Moss v. Pate* (1964), 30 Ill. 2d 271, 195 N.E.2d 641; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 173 N.E.2d 485.) Since the Illinois Controlled Substances Act is explicit in prohibiting 'any material' containing psilocybin, the failure to mention mushrooms in that Act cannot negate that provision. We cannot exclude from the Illinois Controlled Substances Act by implication that which certainly falls into the broad category of any material containing a substance listed in section 204(d). To so hold would be to ignore the plain wording of that section." 110 Ill. App. 3d at 743.

The *Dunlap* decision then considered whether the statute violated due process by failing to give adequate notice that possession of the hallucinogenic mushrooms was illegal. The court divided its discussion of this issue into two parts—first, considering whether the statute violates the rights of a person who possesses mushrooms he knows to contain psilocyn and, secondly, considering whether the law denies due process to the person who possesses psilocyn mushrooms without knowing they contain the prohibited substance. The court concluded that the phrase "any material" implicated the source of something

else rather than a finished product. Thus, it concluded that a person who knew a mushroom contained psilocyn was reasonably apprised that its possession was outlawed by the prohibition against possessing any material containing the drug. The court also rejected the conclusion of the *Fiske* case regarding the person who unknowingly possesses psilocyn mushrooms, stating as follows:

"Even if we concede that the defendants may raise this issue, though, it does not present any doubts of the constitutionality of the Illinois Controlled Substances Act. An individual who cultivated or otherwise possessed *Psilocybe* mushrooms without knowing them to contain psilocyn would not be prosecuted successfully under that statute, because in a prosecution for the possession or sale of controlled substances, the State must prove that a defendant had knowledge of the nature of the substance possessed or sold. (*People v. Bussie* (1968), 41 Ill. 2d 323, 243 N.E.2d 196, *cert. den.* 396 U.S. 819, 24 L.Ed.2d 70, 90 S.Ct. 56; *People v. Castro* (1973), 10 Ill. App. 3d 1078, 295 N.E.2d 538). This knowledge requirement meets the objection that the Illinois Controlled Substances Act punishes without warning an offense of which the accused was unaware. (*Screws v. United States* (1945), 325 U.S. 91, 89 L.Ed. 1495, 65 S.Ct. 1031; *Colautti v. Franklin* (1979), 439 U.S. 379, 58 L.Ed.2d 596, 99 S.Ct. 675). We conclude therefore that the Illinois Controlled Substances Act's prohibition of the possession of mushrooms containing psilocyn does not violate the due process rights of either those who possess the mushrooms knowing them to contain psilocyn, or those who possess them unaware of their characteristics." *Dunlap*, 110 Ill. App. 3d at 746-47.

The divergence between the *Fiske* and *Dunlap* decisions is not really so great. In the first place, both courts held that a statute, which prohibited possession of any material containing the closely related substances of psilocybin and psilocyn was not vague on its face. Both cases also support the conclusion that a statute, such as the one we are considering, is not unconstitutionally vague when evidence is presented that defendant knowingly possessed the controlled substance named in the statute. Finally, while taking different approaches, both *Fiske* and *Dunlap* reach the ultimate conclusion that a defendant who does not know the mushrooms he possesses contain a controlled substance cannot be convicted of a crime.

It may well be that the disagreement between the two cases is the result of a difference in state law. *Dunlap* rejected the argument that the statute might be used to punish an innocent possessor who did not know his mushrooms contained psilocyn by pointing out the requirement of Illinois law that possession of a controlled substance be knowing possession. By contrast, it

appears that the law in Florida at the time *Fiske* was decided may not have required proof that the defendant knew the contents of the substance he possessed or sold. *State v. Medlin*, 273 So. 2d 394 (Fla. 1973). But *cf. Muwwakil v. State*, 435 So. 2d 304 (Fla. Dist. App. 1983), *rev. denied* 444 So. 2d 417 (Fla. 1984) (holding that the State must prove defendant had dominion and control over contraband and knowledge that illicit drugs were within his presence). Thus, the *Fiske* court held that the statute would be unconstitutional if applied in such a manner as to subject to prosecution the innocent possessor of a substance he could not have known was outlawed by reading the statute. Since knowledge is part of the definition of possession in Illinois, the *Dunlap* court found it unnecessary to conclude that the statute lacked the requisite statutory specificity to be applied when the defendant lacks knowledge. Such a defendant could not, in any event, be convicted of possession of a controlled substance.

The most recent case to consider the constitutionality of a statute controlling the possession of psilocybin is *State v. Patterson*, 37 Wash. App. 275, 679 P.2d 416, *rev. denied* 103 Wash. 2d 1005 (1984). The Washington opinion, using much the same reasoning as *Dunlap*, initially held that the prohibition against possession of any material containing psilocybin encompassed possession of psilocybin mushrooms. The court then held summarily that the prohibition was not unconstitutionally vague.

In light of this discussion, we reject defendant's contention that our statute is unconstitutionally vague. We agree with the Florida, Illinois and Washington courts that the use of the phrase "any material . . . which contains" psilocybin, provides ample notice that *mushrooms* containing psilocybin are controlled. Moreover, in light of the use of the catch-all language "any material," it cannot be said that uncertainty is created by the listing of other controlled substances by both the name of the substance and its natural source. Perhaps the legislature could have drafted a statute listing the score of mushroom species known to contain psilocybin, but the failure to use more precise language to accomplish an identical goal does not render the existing law unconstitutionally vague. *United States v. Powell*, 423 U.S. 87, 94, 46 L.Ed.2d 228, 96 S.Ct. 316 (1975).

Furthermore, our drug laws, like those of Illinois, provide that

a defendant cannot be convicted of possession or sale of a controlled substance absent proof that he knew of the presence of the controlled substance. *State v. Flinchpaugh*, 232 Kan. 831, 835, 659 P.2d 208 (1983). Therefore, in contrast to the concern of the Florida court in *Fiske*, there is no danger that a defendant might be convicted of a crime for innocently possessing mushrooms he did not know contained a controlled substance. As was stated in *Screws v. United States*, 325 U.S. 91, 102, 89 L.Ed. 1495, 65 S.Ct. 1031 (1945), "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." Thus, the statute coupled with the requirement of knowledge does not violate the due process rights of either those who possess mushrooms knowing them to contain a controlled substance or those possessing them without such knowledge.

In sum, the plain language of the statute provides notice to the potential defendant that possession and sale of psilocybin in any form is unlawful, while the requirement that possession be with knowledge of the controlled substance would serve to prevent arbitrary enforcement of the statute. We conclude that the statutes describing the crimes of possession and sale of any material containing psilocybin, K.S.A. 1984 Supp. 65-4127b and 65-4105(d)(18), are not unconstitutionally vague.

Affirmed.