31 P.3d 140

**STATE of Arizona, Appellee,**

v.

**Steven David BOYD, Appellant.**

**No. 1 CA–CR 00–0761.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 25, 2001.

**28**

Janet A. Napolitano, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Diane M. Ramsey, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Christopher V. Johns, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

EHRLICH, Judge

¶ 1 Steven David Boyd appeals his conviction for driving with a suspended license while having a dangerous drug or its metabolite in his body. He claims that he was not afforded his right to due process because he lacked notice that the substance he ingested is a dangerous drug. We agree, finding the statute unconstitutional as applied to Boyd, and we therefore reverse his conviction.

*FACTS* [1] *AND PROCEDURAL HISTORY*

¶ 2 At approximately 12:30 p.m. on December 28, 1999, a man who was driving southbound on 19th Avenue in Phoenix watched a man later identified as Boyd driving a red truck. Boyd was driving very slowly, approximately 15 to 20 miles an hour, and the truck was weaving across two lanes of traffic. The man called the police when Boyd passed him, driving through the red light at Missouri Avenue without even touching the truck's brakes.

¶ 3 At approximately the same time, a Phoenix police detective was leaving a restaurant at 19th and Colter Avenues. The detective too noticed Boyd's truck because it was moving much more slowly than the flow of the traffic. He also observed the truck weaving across the traffic lanes, and he saw Boyd abruptly cut off another vehicle.

¶ 4 The detective followed Boyd southbound, watching as Boyd continued to drive erratically for several blocks until both of the truck's right wheels were driven over a curb and the truck stalled. The detective immediately found Boyd passed out. When Boyd was wakened, his speech was slurred and his eyes were unfocused, but there was no odor of alcohol on his breath. The detective directed Boyd to sit on the curb, where Boyd again passed out.

¶ 5 A Phoenix police officer trained as a drug-recognition expert arrived upon the detective's request. The officer woke Boyd and asked what had happened. Boyd, whose eyes were bloodshot and watery, stated that he did not know what had occurred, that he only remembered having been wakened by the detective and being pulled out of his truck.

¶ 6 Boyd told the officer that he was taking a powdered form of an over-the-counter drug and that he had been having seizures. Boyd added that he did not believe that he had done anything wrong because he was taking the same product as was a professional basketball player he named.

¶ 7 Inside Boyd's truck, the officer found a yellowish plastic bottle labeled "Renewtrient"

---

1. We view the evidence in the light most favorable to upholding the verdict, resolving all rea-

sonable inferences against Boyd. *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

and an envelope containing a label for a product called "Thunder." Each product contained 2(3H) furanone di-hydro, also known as gamma butyrolactone ("GBL"), a chemical marketed as a steroid that builds muscle mass and promotes sleep. The Renewtrient label said that the product did not contain any illegal or controlled substances. Additionally, the officer found a newspaper article describing how the basketball player mentioned by Boyd had suffered a seizure after ingesting "Thunder."

¶8 The police took Boyd to the police station and administered a breath test; there was no alcohol in his system. The drug-recognition officer then evaluated Boyd and concluded that Boyd was under the influence of a central nervous system depressant. Boyd also provided a blood sample.

¶9 Boyd was charged with driving with a suspended license while having a dangerous drug or its metabolite in his body, ARIZ.REV. STAT. ("A.R.S.") § 28 1381(A)(3)("aggravated driving"), incorporating § 13 3401(6)("dangerous drug" defined), and with driving while impaired. A.R.S. § 28–1381(A)(1). It was stipulated that Boyd was driving and that he knew that his driver's license was suspended.

¶10 During trial, the State's expert testified that the blood taken from Boyd at the police station contained gamma hydroxybutyrate ("GHB"). GBL, the ingredient in Renewtrient and Thunder, turns into GHB when exposed to water, such as occurs during human liver function. Accordingly, when a person ingests GBL, it converts into GHB within 20 minutes. GHB is listed as a dangerous drug in A.R.S. § 13–3401(6)(c)(xxiv), but GBL is not.[2]

¶11 The jury acquitted Boyd of driving while impaired, but it convicted him of driving with a prohibited drug or its metabolite in his body while his license was suspended, a class 4 felony. A.R.S. § 28–1381(A)(3); § 28–1383(A)(1). The jury also returned a special verdict that the GHB in Boyd's system was the result of ingesting GBL. Boyd's sentence was suspended, and he was placed on three years of probation, conditions of which were four months imprisonment and the payment of various fines.

## DISCUSSION

¶12 Boyd asserts that A.R.S. § 28–1381(A)(3) violates due process because, although it incorporates A.R.S. § 13–3401, defining "dangerous drug" to include GHB, it nonetheless failed to give him notice that his action, i.e., ingesting GBL, was illegal.[3] We agree and hold that, while A.R.S. § 28–1381(A)(3) is not facially vague, as applied to Boyd, it did fail to give him adequate notice that his actions were illegal.

¶13 When a law is challenged on the basis that it is void for vagueness, this court is obliged to try and construe the law so as to declare it constitutional. *State v. McLamb*, 188 Ariz. 1, 5, 932 P.2d 266, 270 (App.1996). Nonetheless, a statute is "unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits." *Id.* Due process requires that the statutory language "convey a sufficiently definite warning as to proscribed conduct when measured by common understanding and practices." *Id.* (quoting *State v. Cota*, 99 Ariz. 233, 236, 408 P.2d 23, 26 (1965)). Boyd claims that, because he ingested GBL, a legal product, pur-

---

2. Boyd's counsel refers to materials regarding GBL and GHB that are neither contained in the record nor of the nature of which we can take judicial notice. Therefore, we will not consider these materials. *State v. Andersen*, 177 Ariz. 381, 386 n. 5, 868 P.2d 964, 969 (App.1993).

3. Section 28–1381 in pertinent part states:
   A. It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances:
   * * *
   3. While there is any drug defined in § 13–3401 or its metabolite in the person's body.

* * *
6. "Dangerous drug" means the following by whatever official, common, usual, chemical or trade name designated: ·
   * * *
   (c) Any material, compound, mixture or preparation which contains any quantity of the following substances having a potential for abuse associated with a depressant effect on the central nervous system:
   * * *
   (xxiv) Gamma hydroxy butyrate.

chased in fact from a health-food store, without knowledge or notice that it would be converted in his body to the proscribed GHB, he had no way of knowing that his conduct was illegal.

¶ 14 There is nothing facially vague about A.R.S. § 28–1381(A)(3). We wrote regarding an earlier statute with identical language:

> We fail to see how section 28–692(A)(3) is ambiguous in any way. It precisely defines, in unequivocal terms, the type of behavior prohibited: No one may drive or be in actual physical control of a vehicle if there is *any* amount of illicit drug or its metabolite in that person's system. None of the statute's terms defy common understanding, and its interpretation is not dependent on the judgment of police officers or prosecutors. The statute gives fair and objective guidelines to both potential offenders and law enforcement personnel that any driver who has ingested a proscribed drug will be subject to prosecution.

*State v. Phillips,* 178 Ariz. 368, 371, 873 P.2d 706, 709 (App.1994); *see State v. Hammonds,* 192 Ariz. 528, 531 ¶ 9, 968 P.2d 601, 604 (App.1998).

¶ 15 The issue, therefore, is whether a driver, having knowingly and voluntarily ingested a substance that is not banned, GBL, nonetheless may be held strictly liable for violating A.R.S. § 28–1381(A)(3) when, through a bodily process unknown to a person of average intelligence and common experience, that substance is transformed into a prohibited substance, GHB. We hold that he may not.

¶ 16 This holding is not inconsistent with our decisions in *Phillips,* 178 Ariz. at 371, 873 P.2d at 709, and *Hammonds,* 192 Ariz. at 531, 968 P.2d at 604. In both of those cases, we turned away facial challenges to the same statutory language as in this case but from persons who knowingly had ingested illegal substances, namely, marijuana and metham-

phetamine. Boyd, to the contrary, ingested a legal, over-the-counter product without knowledge that its active ingredient, GBL, converts into the proscribed GHB upon ingestion.

¶ 17 The fact that a violation of A.R.S. § 28–1381(A)(3) is a strict liability offense also influences our determination that it failed to give Boyd adequate notice such as to fulfill the requirements of due process.[4] If the statute required that a person must *knowingly* consume a prohibited substance, then one who did not know that GBL converted into the prohibited GHB could not be convicted. Alternatively, the statute would provide sufficient notice for one who did know that GBL metabolized into GHB.

¶ 18 The State asks us to find persuasive *State v. Gurreh,* 60 Conn.App. 166, 758 A.2d 877 (2000), *cert. denied,* 255 Conn. 916, 763 A.2d 1039 (2000), but we find that case inapposite because it involved a criminal statute with an element of scienter. Gurreh was convicted of violating a statute prohibiting the possession of a controlled substance with the intent to sell. Based on a tip from a courier service, police officers had learned that a package addressed to Gurreh contained leaves of the *Catha edulis* plant, known as "khat" and sought after for its amphetamine-like qualities. Although khat was not listed in the Connecticut controlled-substances statute, its chemical constituents, cathinone and cathine, were. Gurreh challenged his conviction, asserting that, because the statute failed to list khat, he did not have constitutionally adequate notice that his actions were illegal. The court rejected his claim, reasoning in part that Gurreh was aware of the product's widespread use as an amphetamine-like drug and that using an "assumed name to accept the very large packages of khat indicated consciousness of guilt." *Id.* at 884. In other words, in the court's view, the mere fact that the State had

---

4. Boyd also contends that the State failed to prove that his actions were "voluntary" because he did not know that pills containing GBL metabolize into GHB when ingested. A.R.S. § 13–201 ("The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or omission to perform a duty imposed by law. . . ."). How-

ever, consistent with this statute is the plain language of A.R.S. § 28–1381(A)(3), for bidding in absolute terms anyone from driving a vehicle with a dangerous drug in his body. In other words, § 28–1381(A)(3) is a strict liability offense that does not have a scienter element. Boyd voluntarily ingested Renewtrient and then drove his truck.

to prove that Gurreh intended to distribute khat satisfied the due-process requirement of notice. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 490, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)(requirement of scienter mitigates law's potential vagueness); *Bemis v. State,* 652 N.E.2d 89, 92 (Ind.Ct.App.1995) ("Because the Indiana statutes include scienter as an element of the offense, there is no danger that a person would be convicted for innocently possessing the psilocyn mushroom."); *State v. Justice,* 10 Kan.App.2d 569, 704 P.2d 1012, 1018 (1985)(statute prohibiting chemical psilocybin not vague as applied to those possessing psilocyn mushrooms in part because the statute required knowing possession); *People v. Dunlap,* 110 Ill.App.3d 738, 66 Ill. Dec. 466, 442 N.E.2d 1379, 1385 (1982)(Illinois controlled-substances statute with scienter element presented no issue of due process because an individual who possessed psilocyn mushrooms without knowledge would not be prosecuted successfully under the act).

¶ 19 Unlike the statute at issue in *Gurreh,* A.R.S. § 28–1381(A)(3) is a statute of strict liability. As such, the reasoning of the court in *Fiske v. State,* 366 So.2d 423 (Fla.1978), is more persuasive. Fiske was charged with possession of wild mushrooms containing psilocybin, a substance illegal to possess according to the Florida controlled-substance statute. The Florida statute did not mention mushrooms of any variety, however; it only pro scribed possessing the substance. Fiske was convicted, and he appealed, claiming that the statute violated due process. The appel-late court reversed his conviction, holding that the statute, as applied to Fiske, failed to give constitutionally adequate notice that the mushrooms Fiske carried in the bag were illegal to possess. *Id.* at *424.* Noting that there was nothing vague on the face of the statute, the court emphasized that the statute failed to provide any information as to which plants contained the prohibited substance. *Id.*

¶ 20 When compared to *Fiske,* the facts in this case make for a more compelling case that A.R.S. § 28–1381(A)(3) is void for vagueness as applied to one such as Boyd. Unlike Fiske, Boyd did not "possess" the proscribed substance until it had metabolized in his body. Certainly there was no evidence that Boyd knew that GBL converted into GHB when ingested. Nor does A.R.S. § 28–1381(A)(3) have any requirement of scienter that would alleviate the possibility of an innocent violation of the statute.

## CONCLUSION

¶ 21 Boyd's conviction is reversed.

CONCURRING: ANN A. SCOTT TIMMER, and JOHN C. GEMMILL, Judges.