[No. G033611. Fourth Dist., Div. Three. Nov. 30, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER MICHAEL BOULTINGHOUSE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Under California Rules of Court, rules 976(b) and 976.1, only the Factual and Procedural Background, part I, and the Disposition are certified for publication.

## COUNSEL

Law Offices of Ronald Richards and Associates and Ronald Richards for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale and Elizabeth A. Hartwig, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—Christopher Michael Boultinghouse was convicted of possessing steroids for personal use and possessing for sale gammabutyrolactone (GBL), which is listed as a controlled substance under California law. (Health & Saf. Code, § 11054, subd. (e)(3).) Because GBL is not listed as a controlled substance under federal law, Boultinghouse claims his GBL conviction violates the supremacy clause of the federal Constitution. He also alleges prosecutorial misconduct, as well as evidentiary and sentencing error. Finding no basis to disturb the judgment, we affirm.

On March 21, 2002, federal agents searched Boultinghouse's apartment and found 54 bottles of GBL, four types of steroids and $34,500 in cash. Boultinghouse told agent Eric Ball he did not know where or when he got the GBL. He referred to it as "Renewtrient" and "Blue Nitro" and claimed it was a legal substance commonly used by bodybuilders.

At trial, Ball testified GBL was once widely available as a legal body building substance. However, he said it was banned for consumption around

2000 because it is very similar to gamma hydroxybutyric acid (GHB), a federally controlled substance. In fact, he said once GBL is ingested, it naturally converts into GHB and has the same effect as that drug.

Troy Gielish, a "drug recognition expert," echoed Ball's testimony. He said that while GBL is not expressly listed as a federally controlled substance, it has been illegal to consume under federal law since 2000 because it is an analogue of GHB. Known on the street as "E" or "Ecstasy," Gielish said GHB is a very dangerous depressant that has been linked to numerous date rapes and overdoses.

Boultinghouse testified he got his GBL from a friend at the gym and used it to enhance his muscles and sleep better. He denied using it to get high or having any intention to sell it. But he did admit knowing that GBL is very similar to GHB. His testimony also included his acknowledgement that in 1998 he was convicted of battery causing serious bodily injury, a felony.

The jury convicted Boultinghouse of possessing GBL for sale and four misdemeanor counts of unlawfully possessing steroids. The court then found Boultinghouse suffered two strike convictions in 1998, one for battery with serious bodily injury and one for assault by means of force likely to produce great bodily injury. The court found not true an additional allegation Boultinghouse had suffered a strike conviction in 1995. The court struck the 1998 assault conviction in the interest of justice and sentenced Boultinghouse to eight years in prison, representing double the upper term of four years on the GBL count.

## I

Boultinghouse argues his GBL conviction contravenes federal supremacy principles because GBL is not a controlled substance under federal law and is in fact legally used for some industrial purposes.[1] However, notwithstanding Congress's failure to designate GBL a controlled substance, it is, as explained *post*, still illegal for individuals to possess the drug for private use or sale under federal law. Therefore, Boultinghouse's conviction for possessing GBL for sale is not inconsistent with federal law.

When it comes to criminalizing illicit drug activity, Congress has made it clear it did not intend to prevent the states from getting in on the act. Indeed, it has expressly declared that "[n]o provision of [the federal Controlled

---

[1] Boultinghouse invites us to take judicial notice of a Web site that lists some of these purposes, but there is no need to do so because the government's own witnesses acknowledged GBL has some legally sanctioned industrial applications.

Substances Act] shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict between that provision . . . and that State law so that the two cannot consistently stand together.*" (21 U.S.C. § 903, italics added.)

■   "This express statement by Congress that the federal drug law does *not* generally preempt state law gives the usual assumption against preemption additional force. [Citation.]" (*National Pharmacies, Inc. v. De Melecio* (D. P. R. 1999) 51 F.Supp.2d 45, 54.) Nonetheless, because Congress has not specifically classified GBL as a controlled substance, Boultinghouse reasons federal lawmakers intended to prevent the states from doing so. The claim is not watertight. The fact GBL is not a federally controlled substance does not mean private use or sale of the drug is lawful under the federal statutes. Indeed, the opposite is true.

In *United States v. Ansaldi* (2d Cir. 2004) 372 F.3d 118, 121–122, the court set forth the history of the federal statutory scheme governing GBL and GHB: "In 1999, Congress became aware of significant problems stemming from [GHB's] presence in sexual-assault and driving-under-the-influence cases. In response to these problems, Congress enacted the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000 . . . , which resulted in the scheduling of GHB as a [s]chedule I controlled substance. [Citation.] [¶] Congress also noted a significant and growing problem for law enforcement arising from the use of various precursors and analogues to GHB. Specifically, Congress expressed concern about the fact that '[i]f taken for human consumption, common industrial chemicals such as [GBL] . . . are swiftly converted by the body into GHB.' [Citation.] Although Congress did not schedule GBL as a controlled substance, it did make GBL a 'listed chemical' subject to various registration requirements. [Citation.] It also noted that '[t]he designation of [GBL] . . . as a listed chemical . . . does not preclude a finding . . . that the chemical is a controlled substance analogue.' [Citation.]"

■   This is significant because Congress has declared that any controlled substance analogue intended for human consumption is to be treated as a schedule I controlled substance for purposes of federal law. (21 U.S.C. § 813.) In so doing, Congress intended to "prevent underground chemists from producing slightly modified drugs that are legal but have the same effects and dangers as scheduled controlled substances." (*United States v. Hodge* (3rd Cir. 2003) 321 F.3d 429, 432; see also *United States v. Reichenbach* (C.M.A. 1989) 29 M.J. 128 [reviewing history of federal

controlled substance laws].)    ■    Thus, the question becomes whether GBL is an analogue of GHB and thus prohibited under federal law? As explained in *United States v. Fisher* (11th Cir. 2002) 289 F.3d 1329, the answer is yes.

In *Fisher*, the court stated, "It is undisputed that GBL has no pharmacological effects in a vacuum. However, the human body is not a vacuum. It is also undisputed that upon ingestion, GBL converts into . . . GHB. Therefore, [we] find[] that GBL upon ingestion meets the definition of a controlled substance analogue as its chemical structure and effect on the central nervous system are substantially similar to GHB, a [s]chedule I [c]ontrolled [s]ubstance. 21 U.S.C. § 802(32)(A)(i)–(ii). People of ordinary intelligence would easily be able to determine that a substance, which is converted upon ingestion into a metabolite with a substantially similar chemical structure and effect on the central nervous system as a schedule I controlled substance, would meet the definition of a controlled substance analogue." (*United States v. Fisher, supra*, 289 F.3d at p. 1339.) Thus, "[r]egardless of any other ways in which the [federal laws governing controlled substances] might be vague, there is one thing they make perfectly clear—the sale of GBL for human consumption is illegal." (*United States v. Ansaldi, supra*, 372 F.3d at p. 122.)

■    Because Congress has made the consumption of GBL illegal, it is hard to see how California's prohibition on the drug positively conflicts with federal law. But Boultinghouse claims it does, and in so arguing he relies on the particular manner in which California has chosen to outlaw GBL. Rather than going the analogue route, as Congress has done, California has come right out and designated GBL as a controlled substance. (Health & Saf. Code, § 11054, subd. (e)(3).) Boultinghouse submits this makes its possession easier to prosecute than if it were treated as an analogue, at least with respect to proving the defendant's knowledge of the substance's illegal nature. (Compare *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 [40 Cal.Rptr.2d 722, 893 P.2d 717] [in prosecution for possession of a controlled substance defendant need only be aware of substance's restricted character] with *United States v. Turcotte* (7th Cir. 2005) 405 F.3d 515, 527 [defendant charged with possessing a controlled substance analogue under federal law must know its chemical structure is substantially similar to a controlled substance, and he must either know it has similar physiological effects or intend or represent it does]; but see *People v. Silver* (1991) 230 Cal.App.3d 389 [281 Cal.Rptr. 354] [although patterned after federal law, state analogue statute is satisfied if substance in question has a substantially similar chemical structure or effect as a controlled substance].)

■    Even if that were true, it would not create a conflict between federal and state law. In *Gonzales v. Raich* (2005) 545 U.S. 1 [162 L.Ed.2d 1, 125

S.Ct. 2195], upon which Boultinghouse relies, the court found such a conflict, but in that case the California and federal laws were both different and contradictory. Whereas federal law generally prohibits the manufacture, distribution, or possession of marijuana, the California law under review in *Gonzales* authorized marijuana use for medicinal purposes. (*Id.* at pp. 2199, 2204.) In finding the federal law to be a proper exercise of Congress's commerce power, the Supreme Court noted, "It is beyond peradventure that federal power over commerce is ' "superior to that of the States to provide for the welfare or necessities of the inhabitants," ' however legitimate or dire those necessities may be. [Citations.]" (*Id.* at pp. 2211–2212.)

■ Unlike *Gonzales*, our case does not present any issues respecting Congress's authority under the commerce clause. Rather, it involves the issue of preemption. While state power must yield to a legitimate exercise of federal commerce power, preemption is a far less restrictive doctrine when it comes to state authority. In fact, there is a strong presumption against federal preemption when it comes to the exercise of historic police powers of the states. (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 112 S.Ct. 2608]; *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 949 [28 Cal.Rptr.3d 685].) That presumption will not be overcome absent a clear and manifest congressional purpose. (*Ibid.*)

■ California's authority to regulate narcotics is well established. (*People v. Shephard* (1959) 169 Cal.App.2d 283, 287 [337 P.2d 214].) Indeed, " 'The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.' [Citation.]" (*Robinson v. California* (1962) 370 U.S. 660, 664 [8 L.Ed.2d 758, 82 S.Ct. 1417]; see also *People v. Aston* (1985) 39 Cal.3d 481, 490 [216 Cal.Rptr. 771, 703 P.2d 111] [California has a weighty interest in the suppression of controlled substances].) It would, therefore, take a clear expression of congressional intent to convince us the preemption doctrine is applicable in this case. However, as noted at the outset, Congress has chosen to take a deferential approach to the states in the area of drug enforcement. Thus, we are loath to disturb Boultinghouse's conviction on the grounds of preemption.

It matters little that other states have chosen not to make GBL illegal. (See, e.g., *State v. Boyd* (Ct.App. 2001) 201 Ariz. 27 [31 P.3d 140, 142] [under Arizona law "GHB is listed as a dangerous drug . . . but GBL is not"].) *Boyd* makes clear that the knowing possession of a particular substance is illegal when the Legislature has proscribed that substance. (*Id.* at p. 143.) Our Legislature *has* proscribed GBL, and Boultinghouse does not challenge the sufficiency of the evidence to support his conviction for

possessing that substance for sale. Rather, his primary argument is centered on the notion of preemption and the state's authority to make GBL a controlled substance in the first place. However, as we have explained, there is no federal authority that positively or even remotely conflicts with the law under which Boultinghouse was convicted. We therefore find no violation of federal supremacy principles in this case.

II–V[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Sills, P. J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 15, 2006, S140240. George, C. J., did not participate therein.

---

[*]See footnote, *ante*, page 619.