Justice TIMMER,
dissenting.
¶ 26 Arizona is one of at least seven states that combats drugged driving with a zero-tolerance, per se ban on driving with any controlled substance or its metabolite in the body. Joshua C. Snow, The Unconstitutional Prosecution of Controlled Substance Metabolites Under Utah Code § 4.1-6A-517, 2013 Utah L.Rev. OnLaw 195,197-98 & n. 14 (2013). One of these states, Delaware, explicitly excludes inactive metabolites from its per se ban. Del.Code Ann. tit. 21, § 4177(e)(10) (West 2014). The Majority aligns Arizona with Delaware by construing A.R.S. § 28-1381(A)(3) in a manner that contradicts its plain meaning. I respectfully dissent.
¶ 27 The Majority holds that § 28-1381(A)(3) is ambiguous because the phrase “its metabolite” can mean all of a proscribed drug’s metabolites, some of its metabolites, or only those that can cause impairment. See Op. ¶ 11. But “metabolite” has an accepted meaning, see Taber’s Cyclopedic Medical Dictionary 1349 (20th ed.2005), and nothing in the language of § 28-1381 suggests that the legislature intended to exclude certain types of metabolites from the statutory prohibition. Because § 28-1381(A)(3) “admits of only one meaning,” it is not ambiguous. See Parrot v. DaimlerChrysler Corp., 212 Ariz. 255, 257 ¶ 7, 130 P.3d 530, 532 (2006); see also State v. Phillips, 178 Ariz. 368, 371, 873 P.2d 706, 709 (App.1994) (“We fail to see how section [28-1381(A)(3) ] is ambiguous in any way. It precisely defines, in unequivocal terms, the type of behavior prohibited[.]”).
¶ 28 I also disagree with the Majority that the legislature must have intended something different from what it plainly stated in § 28-1381(A)(3) because imposing a flat ban on driving with any metabolite of an illegal drug in the body is absurd. See Op. ¶¶ 14-17. The legislature reasonably could have concluded that a zero-tolerance provision would most effectively enhance detection and prosecution of drugged driving.
¶ 29 First, the difficulty of detecting drug impairment justifies a flat ban. See Phillips, 178 Ariz. at 372, 873 P.2d at 710 (noting that, unlike the case with alcohol impairment, “there is no useful indicator of impairment from ... drugs because they are fundamentally different from alcohol”). For example, an expert witness in this ease testified that Hydroxy-THC converts quickly to CarboxyTHC, which is why law enforcement typically does not test blood for Hydroxy-THC. Thus, a driver with Carboxy-THC in the blood at the time of testing may or may not have had Hydroxy-THC in the blood while driving. The flat ban ensures that a driver who had an impairing substance in the body while driving is prosecuted even though that substance may have quickly metabolized into a non-impairing substance.
¶ 30 Second, the flat ban permits law enforcement to detect drugged driving by testing urine as well as blood. “[W]hile a urine test detecting metabolites does not conclusively establish the presence of the active proscribed parent drug in the bloodstream, neither does it rule it out, because the metabolite and the active parent will often be present in the body simultaneously.” State v. Hammonds, 192 Ariz. 528, 531 ¶ 10, 968 P.2d 601, 604 (App.1998). Imposing a flat ban on driving with a metabolite of a controlled substance in the body enhances law enforcement’s ability to detect drugged driving. Cf id. ¶ 11 (“In seeking to protect the life and health of its citizenry, the legislature cannot be required to forego an effective prophylactic measure simply because it may be somewhat imprecise.”).
¶ 31 The Majority contends that a flat ban is absurd because it permits prosecution if the non-impairing metabolite in the driver’s body derives from ingesting either medically authorized marijuana or a legal substance that shares a metabolite with a controlled substance. See Op. ¶¶ 16-17. These isolated examples do not make the flat ban on the presence in the body of hundreds of proscribed drugs or their metabolites absurd. Either scenario described by the Majority would unquestionably trigger constitutional *349 scrutiny that might invalidate § 28-1381(A)(3) as applied in particular circumstances. Cf State v. Boyd, 201 Ariz. 27, 29-30 ¶¶ 12-13, 31 P.3d 140, 142-43 (App.2001) (holding that although “AR.S. § 28-1381(A)(3) is not facially vague,” applying it to a defendant who consumed a legal product, GBL, that metabolized into GHB, a proscribed substance, was unconstitutional as applied to the defendant because it “fail[ed] to give him adequate notice that his actions were illegal”). And § 28-1381(A)(3) might not apply if the detected metabolites — active or inactive — emanated from medically authorized marijuana use. See A.R.S. § 28-1381(D) (“A person using a drug as prescribed by a medical practitioner licensed pursuant to title 32, chapter 7, 11, 13 or 17 is not guilty of violating subsection A, paragraph 3 of this section”). This case does not present either situation.
¶ 32 I share some of the Majority’s concerns about imposing a zero-tolerance, per se ban on driving with the presence of non-impairing metabolites in the body. But because § 28-1381(A)(3) clearly and unambiguously reflects that the legislature intended this result, it is not appropriate to employ secondary canons of statutory construction to find a different meaning. Any constitutional challenges to this provision should be addressed on a case-by-case basis. I would affirm the court of appeals’ opinion.