IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

AZ PETITION PARTNERS LLC D/B/A PETITION PARTNERS, AN ARIZONA
LIMITED LIABILITY COMPANY,
*Petitioner,*

*v.*

THE HONORABLE PETER A. THOMPSON, JUDGE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,
*Respondent Judge,*

STATE OF ARIZONA,
*Real Party in Interest.*

No. CR-22-0154-PR
Filed June 21, 2023

Appeal from the Superior Court in Maricopa County
The Honorable Peter A. Thompson, Judge
No. CR 2020-000467-001
**REMANDED**

Opinion of the Court of Appeals, Division One
253 Ariz. 223 (App. 2022)
**REVERSED AND VACATED**

Lee Stein, Anne Chapman, Kathleen E. Brody (argued), Mitchell Stein
Carey Chapman, P.C., Phoenix; and D. Andrew Gaona, Coppersmith
Brockelman PLC, Phoenix, Attorneys for Arizona Petition Partners dba
Petition Partners

Kristin K. Mayes, Arizona Attorney General, Joshua Bendor, Solicitor
General, Casey D. Ball (argued), Assistant Attorney General, Todd C.
Lawson, Senior Litigation Counsel, Phoenix, Attorneys for State of Arizona

Jared G. Keenan, American Civil Liberties Union Foundation of Arizona, Phoenix; R. Adam Lauridsen, Catherine Porto, Amy Philip, Eleanor Brock, Keker, Van Nest & Peters LLP, San Francisco, CA; and Sarah Brannon, American Civil Liberties Union Foundation, Washington, DC, Attorneys for Amicus Curiae American Civil Liberties Union of Arizona

Daniel J. Adelman, Arizona Center for Law in the Public Interest, Phoenix, Attorneys for Amicus Curiae Arizona Center for Law in the Public Interest

David J. Euchner, Pima County Public Defender's Office, Tucson, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

––––––––––––––––

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, MONTGOMERY, and BERCH (RETIRED) joined. *

––––––––––––––––

JUSTICE BOLICK, Opinion of the Court:

¶1        We hold that A.R.S. § 19-118.01 does not facially violate the First Amendment because it only prohibits per-signature compensation to petition circulators.

––––––––––––––––

* Justice Kathryn Hackett King has recused herself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

**BACKGROUND**

¶2        In 2017, the legislature enacted a statute restricting payment for initiative petition gatherers.  Under § 19-118.01:

A.  A person shall not pay or receive money or any other thing of value based on the number of signatures collected on a statewide initiative or referendum petition.  Signatures that are obtained by a paid circulator who violates this section are void and shall not be counted in determining the legal sufficiency of the petition.

B.  A violation of this section is a class 1 misdemeanor.

¶3        Respondent, AZ Petition Partners ("Petition Partners"), is a business that hires circulators to collect signatures for initiative campaigns.  In 2020, a political action committee hired Petition Partners to collect signatures for the Invest in Education Act initiative.  Petition Partners outlined three pay scales to compensate circulators.  The scales set an hourly rate and an expected range of the average number of signatures to gather each hour.  Circulators were then able to move between pay scales depending on their productivity, which was based on several factors, including the number of hours they worked.  However, any adjustment to the hourly pay was purely prospective, with pay adjusted for the next week based on the previous week's productivity.  Petition Partners also offered several bonus programs, including the two at issue here.

¶4        Initiative opponents filed an action for declaratory judgment against the political action committee, alleging that Petition Partners' hourly rates and incentive programs violated § 19-118.01.  The superior court held that the hourly rate scales did not violate the statute but that several of the incentive programs did.  On special action before this Court, we affirmed in part and reversed in part.  *Molera v. Hobbs*, 250 Ariz. 13, 27 ¶ 54 (2020).  However, because we found that the initiative still had enough

3

valid signatures to make it on the ballot, we did not specifically address the statute's constitutionality.  *Id*. at 25 ¶ 38.

**¶5**	Following *Molera*, the State filed 50 various charges against Petition Partners, alleging, among other claims, that paying circulators based in part on the number of signatures and implementing certain incentive programs violated § 19-118.01.  Each charge listed the name of a circulator who received one of these payments and the amount of payment received.  Because the State also filed allegations of aggravating factors under A.R.S. § 13-803 and A.R.S. § 13-823,[1] Petition Partners faces a potential fine of $5 million if convicted.  *See* §§ 13-823(A), -803(A)(2) (establishing a fine of not more than $20,000 for a class 1 misdemeanor offense).

**¶6**	In a motion to dismiss, Petition Partners asserted, among other things, that under *Molera*, § 19-118.01(A) bans only per-signature payments (a fixed rate for each signature), and thus its pay scales and incentive programs did not violate the statute.  The court denied the motion to dismiss based on the lack of an evidentiary record.  Petition Partners again moved to dismiss, this time asserting that unless § 19-118.01 is narrowly construed to only ban per-signature payments, it is overbroad and vague and therefore violates the First Amendment.  The superior court again denied this motion.  Petition Partners sought special action relief.

**¶7**	The court of appeals concluded that, as construed in *Molera*, § 19-118.01(A) bans more than just per-signature payments, and therefore the statute on its face violates the First Amendment.  In reaching that decision, the court emphasized the criminal misdemeanor penalty under § 19-118.01(B).

**¶8**	The State then petitioned this Court for review of whether § 19-118.01 is facially unconstitutional under the First Amendment because (1) it is impermissibly vague under the Fourteenth Amendment and the due process protection of the Arizona Constitution; (2) it is overbroad in

---

[1] A.R.S. § 13-823(A), in relevant part, authorizes a court to deviate from a presumptive fine and impose up to five times the maximum fine where the court finds evidence that an administrative order was violated or that the offense involved malicious or wanton conduct.

violation of the free speech protections of the First Amendment and the Arizona Constitution; or (3) it prescribes a criminal penalty for violation of its provisions.[2] These are important issues of statewide concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

**¶9**      We review the constitutionality of a statute de novo. *State v. Arevalo*, 249 Ariz. 370, 373 ¶ 9 (2020).

**¶10**      Much of the parties' dispute revolves around the appropriate burdens of proof and level of judicial scrutiny. The State argues that § 19-118.01 is a nondiscriminatory, content-neutral business regulation that is entitled to a presumption of constitutionality. It further asserts that in a facial challenge, Petition Partners must show the statute is unconstitutional in every possible application. Petition Partners first argues that the statute regulates and subjects to criminal penalties the act of petitioning, which lies at the core of First Amendment protection, thus triggering strict judicial scrutiny. Second, it argues that the ordinary facial challenge burdens are relaxed because core First Amendment-protected speech is involved. We address these assertions in turn.

**¶11**      We begin by recognizing that the right of the people to initiate legislation and constitutional change is central to Arizona's political heritage. *See Allen v. State*, 14 Ariz. 458, 467 (1913); *Tilson v. Wofford*, 153 Ariz. 468, 470 (1987) ("The legislative power of the people is as great as that of the legislature."); Ariz. Const. art. 4, pt. 1, § 1(2); Ariz. Const. art. 22, § 14. In turn, gathering signatures to qualify measures for the ballot is core political expression protected by the First Amendment. *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). But we have recognized that "the right to place an initiative measure on the ballot is not absolute and 'substantial regulation of elections' is necessary 'if they are to be fair and honest and if some sort

---

[2] Although we granted review of the first two issues under the Arizona Constitution, we do not address these questions because Petition Partners argued that federal precedent conclusively resolves the issues and did not separately develop state constitutional arguments except with regard to strict scrutiny analysis.

of order, rather than chaos, is to accompany the democratic processes.'" *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs,* 249 Ariz. 396, 408 ¶ 41 (2020) (internal citation omitted) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). The mechanism at issue here—per-signature payments— may be an efficient way of incentivizing signature collection, however, it may also be susceptible to abuse.

¶12 As the various free-speech doctrines Petition Partners has invoked here make clear, the state must regulate in this area with great precision and an even hand, alerting all to the law's requirements and proscriptions, and leaving little to nothing by way of subjectivity in enforcement.

¶13 The State nonetheless characterizes the statute at issue as "a 'neutral, noncensorial' statute that regulates economic conduct 'in the shadow of the First Amendment,'" *citing Broadrick v. Oklahoma,* 413 U.S. 601, 614 (1973), thus removing the statute from strict judicial scrutiny. Both the U.S. Supreme Court and this Court have firmly repudiated that contention. In *Meyer*, the Supreme Court struck down a Colorado statute making paid circulation of petitions a felony, holding that "the statute trenches upon an area in which the importance of First Amendment protections is 'at its zenith.' For that reason, the burden that Colorado must overcome to justify this criminal law is well-nigh insurmountable." 486 U.S. at 425. Similarly, in *Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269 (2019), we held in the context of custom wedding invitations that "both the finished product and the process of creating that product are protected speech," and that a "business does not forfeit the protections of the First Amendment because it sells its speech for profit." *Id.* at 286 ¶¶ 65–66; *accord Coleman v. City of Mesa,* 230 Ariz. 352, 360 ¶ 31 (2012) ("Determining that tattooing is protected speech also implies that the business of tattooing is constitutionally protected.").

¶14 The State also invokes a presumption of statutory constitutionality. *See Arevalo*, 249 Ariz. at 373 ¶ 9. But whatever the applicability of such a presumption in other contexts, "if a law burdens fundamental rights, such as free speech or freedom of religion, any presumption in its favor falls away." *Gallardo v. State,* 236 Ariz. 84, 87 ¶ 9 (2014). Therefore, because the statute at issue directly regulates core political speech, no presumption of constitutionality applies here.

¶15        Petition Partners argues that the statute on its face violates the First Amendment in three distinct ways.  First, vagueness:  the statute's "terms are 'so vague, indefinite, and uncertain' that their meaning cannot be reasonably ascertained."  *State v. Western*, 168 Ariz. 169, 171 (1991) (internal citation omitted).  In the speech context, vague laws deprive individuals of certainty regarding what is unlawful, they provide subjective authority to law enforcement, and they chill the exercise of First Amendment rights. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). Second, overbreadth:  the law proscribes substantially more conduct than the government is entitled to forbid.  *Broadrick,* 413 U.S. at 615.  Third, and finally, the statute exacerbates these defects by subjecting protected conduct to criminal penalties. *United States v. Stevens*, 559 U.S. 460, 474 (2010).

¶16        To determine the statute's constitutionality, we apply the *Anderson/Burdick* framework, which weighs the severity of the burden on a plaintiff's First and Fourteenth Amendment rights against the state's interests. *Arizonans for Second Chances*, 249 Ariz. at 409 ¶ 42 (*citing Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983), and *Burdick,* 504 U.S. at 434).  If the burden is severe, the restriction is "subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest."  *Id.* By contrast, if the statute imposes a reasonable, nondiscriminatory burden, it triggers "less exacting review" and "may be justified by the state's 'important regulatory interests.'"  *Id.* (quoting *Burdick*, 504 U.S. at 434).

¶17        Ordinarily, the severity of burden is a "fact-intensive" determination. *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 383 (6th Cir. 2008).  In its present posture, beyond the prosecution itself, we have no evidentiary record upon which to determine the severity of the burden to Petition Partners' First Amendment rights. We do not entertain speculative challenges to laws enacted by the legislative branch.  *Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz.  415, 423 ¶ 24 (2022) (noting that this Court generally is reluctant "to adjudicate hypothetical or abstract questions"). Accordingly, in a typical facial challenge, we require the challenger to demonstrate that under no set of circumstances can the law be enforced in a constitutional manner. *State v. Wein*, 244 Ariz. 22, 31 ¶ 34 (2018) (*citing United States v. Salerno*, 481 U.S. 739, 745 (1987)).  That requirement corresponds to our practice of construing ambiguous statutes, when possible, in a way that preserves the statute's constitutionality. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272–73 (1994).

¶18          But that requirement may be relaxed in the First Amendment context because the law's mere existence, and the penalties for violating it, can exert a "chilling" effect on the exercise of First Amendment rights. *See, e.g.*, *Virginia v. Hicks,* 539 U.S. 113, 118–19 (2003) (noting the overbreadth doctrine provides an "exception" to normal facial challenge rules because "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions."); *Ams. for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2387 (2022) (holding that under such circumstances a plaintiff needs only to show that a "substantial number of [the law's] applications are unconstitutional" (quoting *Stevens*, 559 U.S. at 473)). If a person refrains from engaging in protected speech for fear of plausible potential consequences, the harm from the law is no less than if it was overtly enforced. *See Brush & Nib*, 247 Ariz. at 280–81 ¶ 40 (holding that "the threat of criminal prosecution and significant penalties" creates a chilling effect).

¶19          Here, the potential chilling effect is readily apparent on the statute's face. The law forbids anyone to "pay or receive" anything of value on a per-signature basis. § 19-118.01(A). A violation is a class 1 misdemeanor. § 19-118.01(B). The law has no mens rea requirement, so employers and employees are strictly liable for violations. Indeed, an employee who accepts compensation on a per-signature basis can be criminally liable for an employer's violation even if the payment was made based on a good-faith misinterpretation of the statute.

¶20          From both parties' arguments, it is clear that the possible constitutional infirmities flow in large part from disagreement over whether § 19-118.01 prohibits more than per-signature compensation. The State asserts that it does, relying not on the statute's plain language but on our depiction of the statute in *Molera* as prohibiting compensation for petition circulators that is "dependent on or calculated by, in whole or in part, the number of signatures collected during the compensation period." 250 Ariz. at 24 ¶ 35. The State's interpretation of our holding is erroneous; and in light of the constitutional claims here that were not before us in *Molera*, we clarify that holding now.

¶21          The statute is clear that only per-signature payments are prohibited: "A person shall not pay or receive money or any other thing of

value based on the number of signatures collected . . . ." § 19-118.01(A). By "in whole or in part," we simply recognized in *Molera* that invalid per-signature payments could take a variety of forms, such as "being paid per signature, per completed signature sheet, or by an hourly, daily, or weekly rate that is contingent on collecting a specified number of signatures." *Molera*, 250 Ariz. at 24 ¶ 35. Indeed, we expressly rejected a prohibition based on "a broad connection" between compensation and the number of signatures collected in favor of a narrower statutory interpretation. *Id.* ¶ 36. Although the statute's constitutionality was not then before us, we embraced a narrow interpretation of the statute "to minimize any First Amendment infringement on core political speech." *Id.* at 25 ¶ 38.

**¶22** In other words, we emphasized substance over form, interpreting the statute to solely prohibit compensation that can be determined only by counting the number of signatures already collected. Thus, we rejected the argument that adjustments to compensation for collecting a future, unknown number of signatures could not be based on past productivity. *Id.* ¶ 40.

**¶23** By clarifying that the statute only prohibits per-signature compensation—that is, an amount of payment that can be determined only by counting the number of signatures collected—we removed any facial infirmity from the statute. As we noted in *Molera*, "[c]ourts in other jurisdictions have upheld bans on per-signature compensation for circulators." *Id.* ¶ 37 (citing *Prete v. Bradbury*, 438 F.3d 949, 962 (9th Cir. 2006); *Person v. N.Y. State Bd. of Elections*, 467 F.3d 141, 143 (2d Cir. 2006); *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 618 (8th Cir. 2001)).

**¶24** Perhaps the closest case on point is the Ninth Circuit's opinion in *Prete*. There the court considered Oregon Measure 26, Or. Const. art. IV, § 1b, which like the statute here made it "unlawful to pay or receive money or any other thing of value based on the number of signatures obtained on an initiative or referendum petition." 438 F.3d at 952. The provision goes on to state that it does not prohibit compensation that "is not based, either directly or indirectly, on the number of signatures obtained." *Id.*

**¶25** The court concluded that the measure did not impose a severe burden on First Amendment rights because it "is quite limited in its

proscription, barring only the payment of petition circulators on the basis of the number of signatures gathered." *Id.* at 968. As we concluded in *Molera* regarding the statute at issue here, 250 Ariz. at 25 ¶ 40, the Ninth Circuit found that Measure 26 "does not prohibit adjusting salaries or paying bonuses according to validity rates or productivity." *Prete,* 438 F. 3d at 968; *see also Deters,* 518 F.3d at 385 (distinguishing *Prete* on the basis the Ohio statute before it "banned all remuneration to circulators except on a per-time basis"). In light of the state's "important regulatory interest in preventing fraud and its appearances in [the] electoral processes," *Prete,* 438 F.3d at 969, the Ninth Circuit found that Measure 26 does not violate the First Amendment. *Id.* at 971.

¶26         Since *Molera*, the Ninth Circuit upheld Montana's ban on per-signature compensation in *Pierce v. Jacobsen,* 44 F.4th 853 (9th Cir. 2022). The court held that "prohibiting payment by the signature furthers [Montana's] important regulatory interest in preventing fraud in the initiative process." *Id.* at 867. It reasoned that "by merely banning one type of payment scheme while leaving numerous other options available," the law does not impose a severe burden on First Amendment rights. *Id.* The court noted that "[w]hile it may be possible to demonstrate that a pay-per-signature restriction—including this one—imposes a severe burden, the record before us is insufficient to support such a finding." *Id.* at 865. We find ourselves in the same position, attempting to ascertain the impact of a statute without an evidentiary record.

¶27         Here, overbreadth concerns arise not from the statute itself, but from the erroneous reading of our decision in *Molera*. "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick,* 413 U.S. at 613. As we clarify here, the statute forbids only per-signature compensation, leaving other productivity-based compensation intact. *See Prete,* 438 F.3d at 952 n.1 (outlining permissible forms of compensation); *cf. Deters,* 518 F.3d at 386 (striking down a statute that allowed hourly pay only, meaning that employees "cannot be rewarded for being productive and arguably cannot be punished for being unproductive"). Our clarification also means that the statute is not vague on its face, as permissible and prohibited conduct are clearly demarcated.

**¶28**        Both parties have suggested that constitutional concerns about the statute could also be diminished if we were to read into it a mens rea requirement. That is undoubtedly true because establishing a violation of the statute would then require proof of intent, whereas the statute as written creates strict liability for violations. *See State v. Boyd*, 201 Ariz. 27, 30 ¶ 17 (App. 2001) ("The fact that a violation of [a statute] is a strict liability offense also influences our determination that it failed to give Boyd adequate notice such as to fulfill the requirements of due process.").

**¶29**        However, although we can and should construe statutes to avoid rendering them unconstitutional where the language makes it plausible to do so, as a matter of separation of powers, we cannot rewrite statutes. Ariz. Const. art. 3 (establishing that the departments of government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others"); *In re Nickolas S.*, 226 Ariz. 182, 186 ¶ 18 (2011) (rewriting a statute would "invade the legislature's domain"). The legislature included a mens rea requirement in other provisions of the section in which this provision appears. *See, e.g.,* A.R.S. § 19-114.01 ("Any person who *knowingly* gives or receives money or any other thing of value for signing an initiative or referendum petition, excluding payments made to a person for circulating such petition, is guilty of a class 1 misdemeanor." (emphasis added)). It did not do so here, and we therefore must conclude that the legislature intended to enact the provision without such a requirement. *See DePierre v. United States*, 564 U.S. 70, 83 (2011) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (*quoting Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n.9 (2004))); *see also Hughes v. Jorgenson*, 203 Ariz. 71, 73 ¶ 11 (2002) (noting presumption that "the legislature has said what it means"). Of course, that may make the statute more vulnerable to an as-applied challenge; but that trade-off is one that only the legislature, and not the courts, is empowered to make.

**¶30**        Petition Partners seeks attorney fees pursuant to A.R.S. § 12-348(A)(4), which provides such fees to a party successfully challenging government action in a special action. As Petition Partners did not prevail here, we deny attorney fees.

## CONCLUSION

**¶31**        For the foregoing reasons, we vacate the court of appeals' opinion, although we approve much of its reasoning.  We remand to the trial court for further proceedings consistent with this opinion.